# Ward, Guardian, *v.* Mathews, Admr.

*Proceeding in Probate Court for Final Settlement of an Administration.*

1. *Descent and distribution; who inherit from the illegitimate child.* Under the statute providing that the mother or kindred of an illegitimate child on the part of the mother, in default of children of such illegitimate child or other descendants, are entitled to inherit his estate (Code of 1896, § 1460), construed in connection with the other statutes regulating descent, (Code of 1896, § § 1453-1457), upon an illegitimate child dying intestate leaving a mother and half brothers and sisters on the mother's side, the mother is entitled to one-half of the estate and the remainder descends in equal parts to the half brothers and sisters.

2. *Appeals; costs as against guardian ad litem.*—Under the statute providing that the guardian *ad litem* may appeal in the name of the minor from any final decree of the courts of probate or from any order or decree of the judge of probate, without giving security for costs, and that in the discretion of the judge of probate such guardian *ad litem* should be reimbursed for the costs of the appeal taken by him, (Code of 1896, § § 468-469), a guardian *ad litem* is liable for the costs of an appeal taken by him from a decree of the probate court when the judgment of the lower court is affirmed   (Brown v. Williams, 87 Ala. 353, overruled).

APPEAL from the Probate Court of Jefferson.

Heard before the Hon. M. T. PORTER.

In May, 1897, L. F. Henderson, the illegitimate son of Mrs. Lucretia Henderson, died intestate in the city of

Birmingham, leaving no children or wife; but leaving surviving him his mother, and three half brothers and one half sister, who were grown, and two nieces, the minor children of his deceased half sister.    T. J. Mathews was appointed administrator of L. F. Henderson's estate. Mathews, as such administrator, filed his application for partial settlement, alleging that the decedent had no direct descendants, and that his heirs at law were his mother, his half brothers and sister, and the children of his deceased half sister.    W. C. Ward was appointed guardian for the minor children.    The grown half brothers and sister made no objection to the allegation of the administrator that their mother, Lucretia Henderson, who was the mother of both the decedent and other children who are named as heirs and the grand-mother of the minors; but W. C. Ward as guardian for these minor children pleaded that as L. F. Henderson was the illegitimate son of Lucretia Henderson, that the kindred of this illegitimate child on the part of the mother, who are first entitled to inherit, were the half brothers and sisters of such decedent or their descendants, and they were entitled to the whole of the property, and Lucretia Henderson was improperly named as one of the parties entitled to participate.

To this plea Lucretia A. Henderson, the mother and only surviving parent of the deceased, demurred upon the following grounds: 1st. That the fact that the decedent was the illegitimate child of the demurrant does not change her status in law as an heir of said estate entitled to a distributive interest therein; 2d, That said plea does not set forth any facts which show that the demurrant was not entitled to a distributive interest of one-half of the estate of the decedent.    This demurrer was sustained, and in a decree on partial settlement, the court after hearing the testimony, decided that the mother was entitled to one-half the estate and the half brothers and sister and the children of the deceased half sister of the decedent to the other one-half, and judgment was entered accordingly.    From this judgment the guardian appeals, and assigns as error the sustaining of the demurrer to the plea and the rendition of said judgment.

Upon the affirmance of the decree of the Probate Court, the judgment of this court adjudged "that W. C. Ward, guardian etc. for Etha May Edmerson and Hettie Frances Edmerson, pay the costs of appeal of this court and of the Probate Court." This judgment of affirmance was rendered on January 18, 1899. On February 9, 1899, there was spread upon the motion docket of this court the following motion: "Comes W. C. Ward, who by the court, upon the affirmance of the judgment in the annexed stated cause, on, towit, the 20th day of January, 1899, was adjudged to pay the costs of the appeal in said cause, and moves the court to retax the costs, so that he may not be taxed therewith upon the following grounds:

"1st. That said judgment was rendered against the said W. C. Ward as guardian, when the record shows that he was only the guardian *ad litem* of appellants.

"2d. And for the further ground that he, as guardian *ad litem* is in no way chargeable with the costs of the appeal.

"Wherefore, he moves the court that the judgment, so far as the same charges him with the costs of appeal, be vacated and held for naught."

It is in response to this motion that the Per Curiam opinion, in reference to the costs of appeal is written.

Ward & Houghton, for appellant.—When a bastard dies intestate, leaving no descendants, his real estate descends not to his mother, but to his half brother on the mother's side to her exclusion.—*Butler v. Elyton Land Co.*, 84 Ala. 384.

The contention that section 1922 of the Code of 1886, (section 1460 of the Code of 1896), has been changed by the amendment is not borne out when we consider that this section was operative law when the Butler case was decided. The court then held that all parts of the statute on the same subject should be construed together as one whole, and the reasoning of the court led it to decide that, if the bastard had other kindred—say brothers and sisters, as in that case and in the case at bar—then they inherited to the exclusion of the mother.—*Butler v. Elyton Land Co.*, 84 Ala. 388.

KNOX, BOWIE & DIXON, *contra.*—Section 1460 of the Code of 1896, when construed in connection with the general statutes of dissent, provides that the mother of an illegitimate intestate is entitled to inherit one-half of his estate. The reasoning in the case of *Butler v. Elyton Land Co.*, 84 Ala. 384, compels this construction. Code of 1896, §§ 1453-1457, 1460; *Simmons v. Buller*, 56 Amer. Dec. 263; Schouler's Domestic Relations, 381; *Stevenson v. Sullivan;* 5 Wheat. 207; 24 Amer. & Eng. Encyc. of Law, 416, 417.

SHARPE, J.—The statute relating specially to the descent and distribution of estates of illegitimates dying intestate and without descendants forms section 1460 of the present Code, and is as follows: "The mother or kindred of an illegitimate child on the part of the mother are, in default of children of such illegitimate child or their descendants, entitled to inherit his estate."

In the case of *Butler v. Elyton Land Company,* 84 Ala. 384, this statute was under consideration of this court upon a controversy which involved the question here presented, as to the manner of descent and distribution of such estates as between the mother of a deceased illegitimate and her descendants. It was there held that this section standing alone was doubtful of meaning as to the persons who should take as well as to the quantity to be taken by each; and, therefore, that to ascertain such meaning reference should be had to the other statutes then existing regulating descent in ordinary cases, treating the subject and the system as one. By the ordinary rule then in force the brothers and sisters, or their descendants, were preferred to the mother; and the meaning of the particular statute was solved by applying to it the same rule, and thereby the brother of the deceased was held entitled to the property to the exclusion of the mother. The correctness of that decision has not been questioned in any other case in this court. Since its rendition the ordinary rule of descent and distribution has been changed by the act of January 30, 1891, which as amended by the act of February 21, 1893, (Acts of 1892-93, p. 1055), is as follows: "That hereafter in this State the real and personal property of all persons dying

intestate who have no husband or widow or children, or descendants of children, but who leave surviving a parent or parents, shall descend subject to the payment of debts and charges against the estate; first, to the parents in equal portions, and in case but one parent is surviving, then he or she shall be entitled to one-half of such estate, and the other half to the brothers and sisters of the deceased, or their descendants, as now provided by law, and if there be no brothers and sisters and their descendants, then the whole estate shall go to the surviving parent."

Such was the statute in force at the death of L. F. Henderson and which is still in force, being substantially embodied in article 1 of chapter 35 of the present Code. The statute relating expressly to estates of illegitimates remains unchanged and standing by itself is as uncertain as it was found to be in the trial of *Butler v. Elyton Land Co., supra.* We think the mode there adopted to determine its meaning, which was to apply to it the general rule provided by the statute for descent and distribution in ordinary cases, was the correct one. That rule being changed, the result of its application along with section 1460 of the Code is also changed. As to the father the decedent was *nullius filius* as at common law. But our statute changes that status and makes him the son of his mother. She is his only parent and his only collateral kindred are *ex parte materna.* As between them, applying the general rule as now existing, and as it existed at the death of L. F. Henderson, the mother is entitled to take one-half the estate, real and personal, and of the remainder the other appellees who are brothers and sisters of the deceased are each entitled to one-fifth and the infant appellants are each entitled to one-tenth. It was so decreed in the probate court, and the decree will be here affirmed.

NOTE.—On a subsequent day of the term the following opinion was delivered:

PER CURIAM.—This is an application by a guardian *ad litem,* who prosecuted an appeal to this court in the name of the minors whom he was appointed in the court

below to represent, to vacate the judgment of this court adjudging him liable for the cost of the appeal. Section 1325 entitles the successful party in all civil actions to recover full costs against the unsuccessful party for which judgment must be rendered unless in cases otherwise directed by law. Section 468 provides that the next friend, general guardian or guardian *ad litem* may in the name of the minor take and prosecute an appeal from any final decree of the court of probate or from any judgment, order or decree of the judge of probate; but a guardian *ad litem* is relieved of giving any security for costs. This section had its origin in an enactment entitled an act to regulate appeals from probate courts, approved December 12, 1857, (Acts 1857-58, p. 244) ; and this provision of the enactment was carried into the Codes of 1867 and 1876 without change in verbiage in which a guardian *ad litem* was required to give bond for that purpose. In codifying the Code of 1886, the only change made, was to relieve a guardian *ad litem* of this requirement. That he is a party to the appeal we entertain no doubt. Section 468 and indeed the original act places him upon the same footing with a general guardian or next friend. No distinction is there made between them except in the particular pointed out. And in the case of *Perryman v. Burgster*, 6 Port. 99, in which this court held that a guardian *ad litem* is never chargeable with the costs accruing in the cause in the court below, the reason assigned by the court was that a guardian *ad litem* under the practice proceedings in the English chancery courts was an involuntary party, and it would work a hardship upon him to enforce the payment of the costs against him, which he in nowise voluntarily expressly or impliedly assumed. The doctrine recognizes him as a party. But that he is not liable for costs in the court below for the reasons assigned, is a matter of no consequence in the consideration of this question. He is a party under the statute authorizing him to sue out the appeal to this court, and whenever he avails himself of the authority there conferred he becomes as much a party to the appeal as the general guardian or next friend when the appeal is prosecuted by either of them. That this construction was the legislative one is made

manifest by section 469 of the Code, in which provision
is made for his reimbursement for all costs of the appeal
paid by him, in the discretion of the judge of probate,
from the estate of the testator or intestate or minor. It
was not until the Code of 1886, notwithstanding he was
required to give bond for the costs of the appeal, that
this benefit was conferred upon him. To hold that he
would be entitled to reimbursement for costs paid by him
for which he was not legally liable, would be unreason-
able. So the only reasonable construction of section 469,
is that the legislature intended that he should be liable,
just as executor, administrator, guardian or next friend,
who are also entitled to the same benefit of reimburse-
ment, are liable. Besides under this section no possible
loss can come to him by the payment. It is the plain
duty of the judge of probate to reimburse him for these
costs from the estate of the testator, or intestate or
minor, where a *bona fide* appeal is prosecuted. In the
case of *Brown v. Williams*, 87 Ala. 353, in which a con-
trary view was held by this court, these statutes were
not considered, and the opinion on the point under con-
sideration was based upon the authority of *Perryman v.
Burgster, supra.*

*Perryman v. Burgster* was declaratory of the common
law rule, and its soundness is not here questioned. But
as we have shown, this rule has been changed by statute.
The case of *Brown v. Williams*, not being in conformity
to our views, must be overruled. It follows that the ap-
plication must be denied.