66 So.2d 909

**HUDSON et al. v. REED.**

**1 Div. 468.**

Supreme Court of Alabama.

Aug. 6, 1953.

Harry Seale and M. A. Marsal, Mobile, for appellants.

Adams & Gilmore, Grove Hill, for appellee.

GOODWYN, Justice.

Paul Reed, whose domicile was in Washington County, Alabama, died intestate on March 10, 1950. Administration of his estate is pending in the Probate Court of that county. His estate consists of personal property acquired by him during his lifetime through his own efforts. No part of his estate came to him by inheritance. He was never married. His parents predeceased him. His surviving blood kin include several legitimate brothers and sisters, the descendants of several deceased legitimate brothers and sisters, descendants (appellants here) of a deceased illegitimate sister on the part of his mother, and unknown descendants of a deceased illegitimate brother on the part of his mother. Some of the legitimate brothers and sisters are of the half-blood, his father having been twice married. The illegitimate sister, Elvira Thomas, was born prior to the marriage of Paul's mother to his father. Elvira predeceased Paul, and left surviving her two illegitimate children, Mary Hudson and Gaines Thomas, appellants here. Mary and Gaines intervened in the administration proceedings, declaring that "they are of the heirs and next of kin of the decedent and are entitled to inherit from his estate under the laws of descent and distribution of the State of Alabama." The Administrator demurred to the petition. The demurrer was sustained and the petition dismissed. It is from this action of the probate court that this appeal is taken. Code 1940, Tit. 7, §§ 775, 776; Awbrey v. Estes, 216 Ala. 66, 112 So. 529; Purcell v. Sewell, 223 Ala. 73, 74, 134 So. 476.

It is our view that, under the law of descents and distributions, Mary and Gaines are entitled to share in Paul's estate; and that the court erred in sustaining the demurrer and dismissing the petition.

The ultimate inquiry is whether the illegitimate children of an illegitimate mother can inherit from their mother's legitimate half-brother, when their mother and her

half-brother have the same mother. The following chart may serve to keep the situation in mind:

purpose and intent of a statute, a proper consideration is its history. City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58

Mother (deceased)

Elvira Thomas (deceased)
(illegitimate daughter)

Paul Reed (deceased)
(legitimate son)

Mary Hudson & Gaines Thomas
(illegitimate children)

A subsidiary question is whether an illegitimate child takes *through*, as well as *from*, his mother.

Secs. 7 and 8, Tit. 16, Code 1940, are as follows:

"§ 7. Every illegitimate child is considered as the heir of his mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock.

"§ 8. The mother, or kindred of an illegitimate child on the part of the mother, are, in default of children of such illegitimate child, or their descendants, entitled to inherit his estate."

The answer to the inquiry here presented depends upon the meaning and effect of Sec. 7.

In interpreting this statute, there are several guides or rules to aid us. In the first place, this court has held that this section is not complete within itself, but is part of an entire system of statutes on the subject of descents and distributions, and is to be construed in pari materia with them. Moore v. Terry, 220 Ala. 47, 48, 124 So. 80; Foster v. Lee, 172 Ala. 32, 38, 55 So. 125, Ann.Cas.1913C, 1335; Butler v. Elyton Land Co., 84 Ala. 384, 4 So. 675.

Another rule, and perhaps the most significant here, is that, in ascertaining the

So.2d 626; Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86.

Sections 7 and 8, Tit. 16, supra, were originally enacted in 1824. Acts 1824, p. 49; Aikin's Digest, p. 129, Secs. 4, 5; Clay's Digest, p. 168, Secs. 4, 5. The 1824 Act, which continued in force until the Code of 1852, provided as follows:

"Section 1. Bastards shall be capable of inheriting or of transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother; and shall also, be entitled to a distributive share of the personal estate of any of their kindred on the part of their mother, in like manner as if they had been lawfully begotten of such mother.

"Sec. 2. The kindred of any bastard on the part of his mother, shall be entitled to the distribution of the personal estate of such bastard in like manner as if such bastard had been lawfully begotten of his mother."

It seems clear that the effect of these original provisions, with respect to the inheritance of personal estates, was to make the bastard the heir of both the mother and her blood relations, and the mother and her blood relations heirs of the bastard. It further seems clear, and is admitted by counsel for appellee, that if Section 1 were still the law, the appellants, Mary and Gaines, would be entitled to share in Paul's

estate. Counsel insist, however, that the change wrought in codifying Section 1 as a part of the 1852 Code denies him that right. The reason given is that the statute as now worded, in contrast to the statute as originally enacted, shows a legislative intent to restrict the right of inheritance by an illegitimate child to the estate of such child's mother which the mother owned at her death. In other words, it is insisted that the illegitimate child inherits only *from* his mother and cannot inherit *through* her.

■ Sections 7 and 8, Tit. 16, supra, as presently worded, were originally codified as a part of the 1852 Code, the first Code of laws to be adopted in Alabama; and have been included in each subsequent Code without change. There is another apt rule of construction, bearing on the effect of the codification, which has been thus stated in the case of Miller v. State ex rel. Peek, 249 Ala. 14, 21, 29 So.2d 411, 416, 172 A.L. R. 1356:

"When a doubt or ambiguity result from codifying a statute or statutes, the Court will refer to the original enactment or enactments, and give effect to its or their provisions as originally framed, notwithstanding a change in the phraseology, unless a clear intention is manifest to change its operation and effect."

See, also, East Tenn., Va. & Ga. R. R. Co. v. Hughes, 76 Ala. 590, 592.

■ We recognize that a strict construction of Sec. 7 would lend support to appellee's insistence. But we do not think it should be given a strict construction. Although it is in derogation of the common law, it is basically remedial and beneficent, and we think it should be liberally construed in order to carry out its obvious purpose of assuaging the harsh and unjust rule of the common law. When so construed in the light of its history and in connection with the other statutory provisions on the subject of descents and distributions, there seems no escape from the conclusion that Mary and Gaines are entitled to inherit through their mother, Elvira, a distributive share of Paul's estate.

The principal cases which have dealt with what are now Secs. 7 and 8, Tit. 16, supra, are the following: Butler v. Elyton Land Co., supra; Ward v. Mathews, 122 Ala. 188, 25 So. 50; Foster v. Lee, supra; Moore v. Terry, supra; and Mostilla v. Ash, 234 Ala. 626, 176 So. 356.

In the Butler case there was involved the right of an illegitimate brother to inherit from his illegitimate brother, as against the right of their mother to inherit. It is apparent, therefore, that the facts in that case are not the same as in the instant case. It was held, in view of the statute then extant prescribing the descent of property, Sec. 1915, Code 1886, that the surviving illegitimate brother was entitled to inherit and not the mother. Sec. 1915, Code 1886, provided for descent as follows:

"1915. * * *

"2. If there are no children, or their descendants, then to the brothers and sisters of the intestate, or their descendants, in equal parts."

The present law of descent gives to the mother and father of an intestate priority over the intestate's brothers and sisters. Code 1940, Tit. 16, Secs. 1, 10.

The import of the Butler case [84 Ala. 384, 4 So. 676], here pertinent, is a recognition that the Code sections dealing with inheritance by and from illegitmates are a part of "an entire system of statutes on the subject of descents and distributions".

The Ward case, supra, approved the reasoning in the Butler case, supra, but held, in view of a change in the statute on descents and distributions, that the mother took one-half of the estate of her illegitimate child, with the other half being divided between his half brothers and half sister, or their descendants. In speaking of Sec. 1460, Code 1896, Sec. 8, Tit. 16, Code 1940, in connection with the Butler case, supra, it was said:

"It was there held that this section standing alone was doubtful of meaning as to the persons who should take as well as to the quantity to be taken by each, and, therefore, that to ascertain such meaning reference should be had to the other statutes then exist-

ing regulating descent in ordinary cases, treating the subject and the system as one."

It was stated further:

"As to the father, the decedent was *nullius filius*, as at common law. But our statute changes that status and makes him the son of his mother. She is his only parent, and his only collateral kindred are *ex parte materna*." [122 Ala. 188, 25 So. 51]

In the Foster case, supra, N, a former slave, owned certain property at the time of her death. H was her illegitimate son. H predeceased N. N died intestate. B and C were the legitimate child and grandchild, respectively, of H. The question presented was whether B and C, the lineal descendants of H, could inherit from N as H himself could have done if he had survived N.

It is apparent that the answer to the question involved an interpretation of Sec. 3761, Code 1907, now Sec. 8, Tit. 16, Code 1940. However, the opinion contains the following observation in referring to both Secs. 3760 and 3761, Code 1907, now Secs. 7 and 8, Tit. 16, Code 1940:

"Under these later statutes, it seems that bastards are heirs only of their mothers, and of her other bastard children, if any, and not of any kindred on the part of their mothers, as they were under the former law, although all their kindred on the part of their mothers are still made the heirs of bastards. Otherwise the present statutes do not materially differ from the act of 1824." [172 Ala. 32, 55 So. 125]

It seems clear that that part of the foregoing observation which has reference to Sec. 3760, Code 1907, now Sec. 7, Tit. 16, Code 1940, is dictum; as indeed it was recognized as such by at least one member of the court who participated in the decision. Mr. Justice Anderson, later Chief Justice, concurred in the opinion with the statement that:

"He does not commit himself to the view that under Sections 3760 and 3761 of the Code, bastards cannot inherit from the mother's collateral kindred;

that being unnecessary to the decision of the case."

We here observe that it is on this dictum that appellee places chief reliance.

In the Moore case, supra, the question was whether a child had been legitimated so as to inherit from one as his father. The right of an illegitimate child to inherit through his mother from the mother's blood relations was not involved. However, the opinion contains this statement:

"A bastard who is not legitimated may only of course inherit from his mother or her descendants, even though his paternity is satisfactorily shown. Sections 7371, 7372, Code [1923; Secs. 7 and 8, Tit. 16, Code 1940]." [220 Ala. 47, 124 So. 81]

It can be seen, therefore, that we are confronted with the expression in the Foster case that "bastards are heirs only of their mothers, and of her other bastard children, if any, and *not of any kindred on the part of their mothers*," and the expression in the Moore case to the effect that a bastard may inherit only "from his mother or *her descendants*".

The italicized part of the excerpt from the Foster case is clearly supportive of the position taken by appellee. However, it is not clear just how it can be said that Sec. 7, Tit. 16, supra, provides for inheritance by a bastard from his mother's "other bastard children," and at the same time be said that he is not the heir of "any kindred" on the part of his mother. Section 7 simply provides that a bastard "is considered as the heir of his mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock." The "other bastard children" of a bastard's mother are of his kindred on the part of his mother; so are his mother's legitimate children and his mother's other kindred. We see nothing in Sec. 7, nor in the other statutes on descents and distributions, indicating a purpose to limit a bastard's kindred on the part of his mother to the mother's "other bastard children". If it be held that a bastard is the heir of his mother's "other bastard children," there seems no good reason, certainly insofar as Sec. 7, Tit. 16, is concerned,

why he should not be held to be the heir of his other kindred on the part of his mother.

The expression in the Moore case may be said to support appellant's position to the extent that it recognizes that the right to inherit is not limited to the estate which the mother owned at her death, but that the right extends *through* the mother to "her descendants." It will be seen that the Moore expression would give the bastard the right to inherit not only from his mother's "other bastard children," but also from all of her descendants, both legitimate and illegitimate.

These two cases and the Butler case, supra, are the only ones which have come to our attention touching on the question involved in the case at hand. It does not appear, therefore, that the precise question here presented has been authoritatively determined by this court.

■ The descent of Paul's estate is controlled by Code 1940, Tit. 16, Secs. 1 and 10. So far as here pertinent, these sections provide for descent as follows:

"If there are no children or their descendants, and no father or mother, then to the brothers and sisters of the intestate, or their descendants, in equal parts."

Thus, there is presented the question whether Mary and Gaines are "descendants" of Paul's "sister," Elvira, within the meaning of this provision. It is our view that they are.

■ Under the common law, an illegitimate child had no mother or father, no brothers, sisters, or other kindred. He was not considered to have any inheritable blood and, hence, was without capacity to inherit or transmit inheritance, except to the heirs of his own body. But this harsh rule has been changed by statute in this state, as we have already noted. There can be no question about a legitimate child having the right to inherit from his illegitimate half-brother. Code 1940, Tit. 16, Sec. 8, supra; Butler v. Elyton Land Co., supra. And it has been held that a bastard's uncles of the half-blood on the side of the bastard's mother are the bastard's "next of

kin" and entitled to his estate, if the bastard dies intestate and leaves no surviving wife, mother, brothers or sisters, or their descendants. Mostilla v. Ash, 234 Ala. 626, 176 So. 356. Is it reasonable to hold, then, that an illegitimate child has no inheritable blood when the flow of the blood is in his direction, and at the same time to hold that he has inheritable blood for the purpose of transmitting inheritance to his kindred on the part of his mother? Can it logically be said it was intended that inheritable blood should flow in only one direction? We are not persuaded that the legislative intent in codifying the act of 1824 was to make the provisions of that act more restrictive. The trend of legislation on the subject everywhere has been to lessen the harsh and illiberal rule of the common law.

It is to be noted that Section 1 of the 1824 Act gave to bastards the right "to a distributive share of the *personal estate* of any of their kindred on the part of their mother." The present statute makes no distinction in the class of property inheritable. In that respect, it seems clear it was intended, by the 1852 Codification, to further liberalize the act by giving the right of inheritance without limitation as to the class of property. Likewise, the provision for inheritance from bastards was broadened by permitting the inheritance of all property, and not personal estate only. This is another indication of the intention not to restrict the scope of the act in codifying it, but, instead, to broaden it.

■ We hold that an illegitimate child can inherit from his kindred on the part of his mother, in like manner as if he had been lawfully begotten of his mother. Accordingly, the demurrer to the petition should have been overruled. An order will be here entered (a) setting aside the judgment of the probate court sustaining the demurrer to the petition, (b) overruling the demurrer to the petition, (c) setting aside the judgment of the probate court dismissing the petition, and (d) reinstating the petition. It is so ordered.

Reversed, rendered and remanded.

All the Justices concur.