106 So.2d 163

**ALABAMA PUBLIC SERVICE COMMISSION and State of Alabama**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.**

3 Div. 753.

Supreme Court of Alabama.

July 24, 1958.

Rehearing Denied Oct. 30, 1958.

John Patterson, Atty. Gen., Gordon Madison and Wm. C. Younger, Asst. Attys.

314

Gen., and Maurice F. Bishop, Birmingham, for appellants.

R. E. Steiner, Jr., Steiner, Crum & Baker, Montgomery, Jas. A. Simpson, Lange, Simpson, Robinson & Somerville,

Birmingham, and Jefferson Davis and Norman C. Frost, Atlanta, Ga., for appellee.

J. M. Breckenridge, Asst. City Atty., Birmingham, and Hugh H. Walker, Florence, amici curiae.

GOODWYN, Justice.

This is an appeal by the Alabama Public Service Commission (herein referred to as the "Commission") and the State of Alabama from a decree of the circuit court of Montgomery County, in equity, setting aside the Commission's order of April 21, 1954, which denied Southern Bell Tele-

phone and Telegraph Company (herein referred to as the "Company") the right to put in operation the schedule of increased intrastate rates proposed and filed by it with the Commission on January 20, 1954, and which also ordered the Company to continue in force and effect the same intrastate rates prescribed by the Commission in its order of January 25, 1952. The circuit court decree also remanded the cause to the Commission for further proceedings in accordance with the court's opinion.

The proceedings before the Commission began on January 20, 1954, when the Company filed with the Commission a proposed new schedule of increased rates and charges for its Alabama intrastate telephone service, including both local service and intrastate toll service. These rates were to become effective on February 21, 1954. The Commission, acting pursuant to § 54, Tit. 48, Code 1940, suspended the operation of the proposed new rates for a period of 60 days in order to investigate their reasonableness. Hearings were held during February, March and April of 1954. Thereafter, on April 21, 1954, the Commission entered its order denying the Company's petition for an increase in rates. On April 22, 1954, the Company took an appeal to the circuit court of Montgomery County, in equity, pursuant to § 79, Tit. 48, Code 1940. That court entered its findings and decree on November 16, 1955, substantially agreeing with the Company's position. The appeal before us is from that decree, brought by the Commission and the State pursuant to § 90, Tit. 48, Code 1940. The case was argued and submitted here on January 24, 1957.

In short, the questions argued are as follows:

I. What is the proper method of determining the rate base in a case of this type?

II. Were the findings of the Commission relative to various exclusions (materials and supplies, cash requirements, telephone plant under construction, and excess profits taxes paid by Western Electric Company) from the rate base and certain additions to net operating income (due to increased directory advertising rates, decrease in Federal Income Tax resulting from apportioning consolidated tax liability, conversion of three manual control offices to dial, and adjustment for Western Electric Company's excess profits taxes) proper?

III. What is a proper rate of return to be allowed the Company?

The basic law in this state prescribing the rates to which a utility is entitled is contained in § 52, Tit. 48, Code 1940, as amended by Act No. 89, appvd. June 14, 1949, Acts 1949, p. 113, which provides, in pertinent part, as follows:

"The rates and charges for the services rendered and required shall be reasonable and just to both the utility and the public. Every utility shall be entitled to such just and reasonable rates as will enable it at all times to fully perform its duties to the public and will, under honest, efficient and economical management, earn a fair net return on the reasonable value of its property devoted to the public service. In any determination of the commission as to what constitutes such a fair return, the commission shall give due consideration, among other things, to the requirements of the business with respect to the utility under consideration, and the necessity, under honest, efficient and economical management of such utility, of enlarging plants, facilities and equipment of the utility under consideration, in order to provide that portion of the public served thereby with adequate service. * * *"

The heart of § 52 is the provision that a utility is entitled to earn a "fair net return" on the "reasonable value" of its property. Our primary concern on this appeal is with the meaning of the phrase "reasonable value."

## I.

In the 1949 telephone rate case (Alabama Public Service Commission v. Southern Bell Telephone & Telegraph Company, 253 Ala. 1, 42 So.2d 655) both the Company and the Commission apparently acquiesced in using the original cost of the Company's property less depreciation as the basic element in establishing the rate base. No question was there presented as to the propriety of such action. In the case now before us the Commission continues to use the same method while the Company now insists that the rate base should be arrived at by using the cost of reproduction of the Company's property, less allowances for depreciation, as the basic element. The trial court held the Company's position to be correct. To state the first question more specifically: What is meant by the provision in § 52, Tit. 48, supra, that a utility is entitled to "earn a fair net return on the *reasonable value of its property* devoted to the public service?" Does "reasonable value" mean the cost of reproduction new, less allowances for depreciation, exclusively, or the original cost, less depreciation, exclusively, or is the Commission required to give due consideration to both of these elements, not one to the exclusion of the other, and also to other factors, in arriving at the "reasonable value" of the Company's property for rate-making purposes?

■ It might well be that the simpler and less variable method of establishing a rate base is by using the "cost less depreciation" method. But it is not the prerogative of this court to say that the simplest method, or the method thought by us to be the best, should be followed in fixing utility rates. Whether any particular formula should be used is a matter which, within constitutional limits, is properly addressable to the legislature. "Neither the commission nor the courts, in the rate-making process, have any liberty to ignore the standards set up by the legislature or to substitute a formula of their own, however meritorious such formula may be." St. Paul City Ry. Co. v. City of St. Paul, 242 Minn. 188, 64 N.W.2d 487, 498. In New York Telephone Company v. Public Service Commission, 309 N.Y. 569, 132 N.E.2d 847, 851, it is said:

"If, then, as we believe, the statute has a clear and definite meaning by its plain language and in the light of its legislative history, neither the commission nor the courts may presume to say that its meaning must now be changed because it reflects an approach to rate making which may currently be unpopular with some experts. * * *

"* * * The function of the judiciary is not to choose between different theories of rate making on the sole basis of their alleged merits. All arguments concerning such matters should properly be addressed to the Legislature * * *."

If there were nothing to be considered in determining the meaning of "reasonable value" of a utility's property but the provisions of § 52, standing alone, it might be argued with some merit that it means simply the amount it would presently cost to reproduce such property new, less allowances for depreciation. However, it seems to us that § 52 must be construed in connection with what is now § 319, Tit. 48, Code 1940, and when so construed its meaning is made clear. We proceed to a discussion of our reasons for this statement.

Section 16, Chap. 1, art. 1, Tit. 48, Code 1940, provides as follows:

"Whenever the word 'utility' or 'utilities' is used in this chapter the same shall include all utilities defined under sections 102, 302, 239, and 270 of this title."

Section 102 is included in Chapter 2, art. 1, Tit. 48, which deals with "transportation companies" and contains, in part, the following definition:

"The term 'transportation company' shall mean and include every person

not engaged solely in interstate commerce or business that now or may hereafter own, operate, lease, manage or control, as common carriers or for hire: * * * any telephone line. * * *"

Section 52 is a part of Chap. 1, Tit. 48. Accordingly, by virtue of § 16, supra, § 52 is made applicable to telephone companies. However, the original counterpart of § 52 was not applicable to such companies.

■ Section 52 originally became law in 1920 (Act No. 37, Gen. and Loc.Acts, Spec.Sess.1920, p. 38, appvd. Oct. 1, 1920; § 52 being a consolidation of a portion of § 23 and all of § 24 of said Act) and has remained the same (§ 9770, Code 1923; Tit. 48, Code 1940) until the present time except for the 1949 amendment. This amendment consisted of the addition to § 52 of a proviso with reference to the use of information concerning the intrastate operations of railroads as reflected in their accounts and records kept in accordance with Federal law or the uniform system of accounts prescribed by the Interstate Commerce Commission. The amendment has no bearing on the meaning of the phrase "reasonable value" as used in § 52. For the purposes of this case, the wording of § 52 has continued unchanged since its original enactment in 1920. No part of Act No. 37, when enacted, was made applicable to telephone companies.

Also included in Act No. 37 were provisions (§ 14) now embraced in § 319, Tit. 48, Code 1940. Section 14 of Act No. 37 provided, as does § 319, Tit. 48, for ascertainment by the Commission of the valuation of the property of a utility covered by the Act when deemed necessary by the Commission or when requested by the utility. Provision is then made (§ 16, Act No. 37; § 321, Tit. 48) that the valuation fixed by the Commission's final order "shall for all future rate-making purposes be the permanent basic valuation of the property of such utility unless there be a revaluation of the property of such utility as is

hereinafter provided." Section 14 of Act No. 37 laid down, as does § 319, Tit. 48, the following rule:

" * * * In arriving at a valuation of the property of any utility as provided in this section, the commission shall give due consideration to the history and development of the utility and its property, original cost, cost of reproduction, as a going concern, and other elements of value recognized by the laws of the land for rate-making purposes. * * * Upon the completion of the valuation of any utility, as herein provided, the commission shall thereafter keep itself informed of all extensions and improvements or other changes in the condition and values of the property of such utility, and shall ascertain the value thereof, and shall from time to time revise and correct its valuation to the extent that may be necessary by reason of such extension and improvements or other changes in the physical condition and resulting value of such property; * * *."

It seems to us that when § 52 was originally enacted in 1920 as a part of Act No. 37 (§ 24) the meaning of the phrase "reasonable value" of the utility's property, as there used, was made clear when considered in connection with the provisions of § 14 of the same Act (now § 319, Tit. 48). Surely, there is no sound basis for imputing to the legislature an intent, in enacting Act No. 37, to prescribe one method of arriving at a valuation which, under § 14 of the Act, would become a permanent basic valuation for rate-making purposes and another and different method of fixing a valuation for rate-making purposes under § 24 when there has been no permanent basic valuation made. Under either section, the valuation would be for the same purpose—to serve as a rate base. We think, therefore, that the phrase "reasonable value," as used in § 24 of Act No. 37 (§ 52, Tit. 48), necessarily must be construed as embracing the elements which the Commission is required to consider in

arriving at a valuation of a utility's property under § 14 of the Act.

Both §§ 14 and 24 were included in the 1923 Code (§§ 9757 and 9770, respectively) as part of art. 8, Chap. 335. Chapter 335 was a codification of laws prescribing the powers and duties of the Public Service Commission. Article 8 dealt with "Public Utilities Other Than Transportation Companies." By its terms (§ 9742) §§ 9757 and 9770 were not made applicable to telephone companies.

■ Chapter 335 of the 1923 Code was, in most respects, carried into the 1940 Code as a part of Chap. 4, Tit. 48, which deals with "public utilities other than transportation companies or motor vehicle carriers." Chapter 4, by its terms, is not made applicable to telephone companies (§ 302, Tit. 48). Section 9770 of the 1923 Code (§ 24, Act No. 37) was left out of Chap. 4 and included as § 52 of Chap. 1, art. 2, Tit. 48, which deals with the Commission's "powers and duties in general." As already noted, by virtue of § 16, Tit. 48, § 52 is now expressly made applicable to telephone companies. Thus, the question arises as to whether the meaning of the provisions of § 52, acquired when originally enacted and continuing until the 1940 Code, was changed by placing such provisions in Chap. 1, Tit. 48, instead of Chap. 4, Tit. 48, and making them applicable to telephone companies. We think not. As stated in Miller v. State, 249 Ala. 14, 21, 29 So.2d 411, 416, 172 A.L.R. 1356:

"* * * When a doubt or ambiguity result from codifying a statute or statutes, the Court will refer to the original enactment or enactments, and give effect to its or their provisions as originally framed, notwithstanding a change in the phraseology, unless a clear intention is manifest to change its operation and effect. East Tennessee, V. & G. R. Co. v. Hughes, 76 Ala. 590; Jackson County v. Derrick, 117 Ala. 348, 23 So. 193; Griffin v. Fowler, 17 Ala.App. 44, 81 So. 426; Ex parte, Fowler, 203 Ala. 98, 82 So. 112. * * *"

See, also, Hudson v. Reed, 259 Ala. 340, 342(2), 343(3), 66 So.2d 909, 911, where it is said that "in ascertaining the purpose and intent of a statute, a proper consideration is its history. City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58 So.2d 626; Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86."

We think the following also indicates the legislative intent in recodifying what is now § 52, Tit. 48, supra. The provisions of § 52, although removed from their former place as a part of the law applicable to certain utilities (not including telephone companies), are nevertheless still made applicable, by virtue of § 16, Tit. 48, supra, to such utilities the same as formerly. Being so, the meaning of the provisions of § 52 (§ 9770, Code 1923; § 24, Act No. 37), so far as concerns those utilities, clearly has continued unchanged. The provisions of § 52 are also made applicable, by § 16, to certain additional utilities, including telephone companies, as already noted. Can it be said that "reasonable value", as used in § 52, was intended to mean one thing when applied to some utilities and something different when applied to others? We do not think so.

■ "Due consideration" has been said to mean the giving of "such weight or significance to a particular factor as under the circumstances it seems to merit, and this involves discretion." Black's Law Dictionary, 4th Ed. p. 589, citing United States ex rel. Maine Potato Growers & Shippers Ass'n v. Interstate Commerce Commission, 66 App.D.C. 398, 88 F.2d 780, 783. But we think it means more than receipt in evidence of the "cost of reproduction" and its summary rejection, as was done in the case before us. Unquestionably the legislative intent was that consideration in good faith be given to the element of reproduction cost as some evidence of the value of a utility's property for rate-making purposes. It seems ap-

parent that the Commission did not consider this element to have any weight in its determination of the reasonable value of the Company's property. In fact, there was a rejection of this element, the Commission stating in its order that it was of the opinion "that the proper rate base is net average investment less depreciation." While the cost of reproduction less depreciation is not the sole criterion, it is nevertheless one of the elements which the legislature has said *shall* be considered in determining the reasonable value of a utility's property for rate-making purposes. In excluding the cost of reproduction as one of the essential factors in arriving at the rate base the Commission erred to the prejudice of the Company's substantial rights in its application of the law. Section 82, Tit. 48, Code 1940. The circuit court also erred in holding, in effect, that the cost of reproduction less depreciation was the controlling element in fixing the reasonable value of the Company's property.

## II.

The next series of questions relate to the propriety of the Commission's action in making certain exclusions to the rate base and certain additions to the Company's operating income during the test period (12 months ending September 30, 1953). In view of what has been said in answering question I, the case must be remanded to the Commission for further proceedings. Undoubtedly, on remandment there will be additional testimony taken which could have a bearing on the propriety of these exclusions and additions. Also, it is not now possible to say what effect, if any, the Commission's action on these several items will have in determining whether its new rate order, to be entered after further proceedings, is just and reasonable. In this connection, we quote the following from Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333:

"We held in Federal Power Commission v. Natural Gas Pipeline Co., supra [315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037] that the Commission was not bound to the use of any single formula or combination of formulae in determining rates. Its rate-making function, moreover, involves the making of 'pragmatic adjustments.' Id., 315 U.S. at page 586, 62 S.Ct. at page 743. And when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirements of the Act [Natural Gas Act of 1938]. * * * It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. * * * *"

We think a discussion of these questions at this time should be pretermitted.

## III.

On remandment there will probably be additional testimony taken concerning a fair rate of return on the "reasonable value" of the Company's property ascertained in accordance with this opinion. Accordingly, we think a discussion at this time as to what rate of return should be allowed the Company, so as not to be confiscatory of its property, would be inappropriate. However, we think it advisable to observe that approval of the rate of return of 6⅔% in the 1949 rate case (253 Ala. 1, 42 So.2d 655, supra) was based on the evidence in that particular case. What was there said cannot be taken as requiring a rate of return of 6⅔%, neither more nor less, in every case. An appropriate rate of return necessarily will vary, depending upon the particular conditions and factors in each case

■ Before a decision can be made finally as to whether rates and charges approved by the Commission are reasonable and just to both the Company and the public, there must be a new determination by

the Commission of the "reasonable value" of the Company's property in accordance with what has been said in this opinion and a new rate order approved. If, after such redetermination and refixing of rates, the Company feels it is aggrieved to the extent warranting appeal to the courts, then that course will be open to it. The courts stand ready to protect the rights of a utility as well as the interests of the public. However, we would emphasize that the responsibility for fixing rates and charges which are reasonable and just to both the utilities and the public rests with the Commission and not with the courts. So long as the Commission pursues its statutory authority, within constitutional limits, the courts should not interfere with its determinations.

The decree of the circuit court is reversed and the cause is remanded to the Commission for further proceedings in accordance with this opinion. In the meantime, the supersedeas order made in the circuit court, and the bonds given pursuant thereto, as required by law, shall remain and continue in full force and effect until final disposition of this cause. See: Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 157, 47 So.2d 455.

All the Justices concur.

### On Rehearing.

GOODWYN, Justice.

The Company has applied for a rehearing. The only question raised concerns that portion of the opinion and judgment relating to the continuance in force and effect of the supersedeas order made in the circuit court and the bonds given pursuant thereto. The Company charges error "in not holding, ordering, adjudging and decreeing that 'In the meantime, until the Commission shall determine the lawful rates and charges for the future, Southern Bell Telephone and Telegraph Company has the right to charge the rates as proposed by it in the schedule filed with the Alabama Public Service Commission on January 20, 1954, without the necessity of filing any supersedeas or other bond; and all supersedeas bonds heretofore filed in this cause by said company are discharged and all parties thereto freed from any liability thereunder.' "

We are unable to agree with the Company's position. We think what was said on final rehearing in Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 157, 47 So.2d 455, 470, supra, which we reaffirm, is decisive of the question, viz.:

"* * * [T]he remandment ordered by authority of § 82, Title 48, Code 1940, is what it purports to be under the terms of that statute. That is to say, it becomes the duty of the Commission and it is directed to set the cause down for further proceedings and the taking of evidence as is available to the utility, and that the Commission, on the basis of such proceedings and evidence as shall be submitted, in connection with that previously taken, shall make a redetermination of the issues there made and determine whether the proposed rate, or what new rate, if any, shall be approved by the Commission, subject to further appeal as may be provided by law. Until such an order is made and the cause finally determined, or otherwise finally disposed of, it remains *in fieri*. Until that time the supersedeas order first made and the bond given in accordance with it remain in effect. * * *"

The original opinion has been revised in several minor respects, but in no way altering the holding of the court.

The application for rehearing is overruled.

All the Justices concur.