307 So.2d 521

**STATE of Alabama and George C. Wallace as Governor of the State of Alabama et al.**

**v.**

**ALABAMA PUBLIC SERVICE COMMISSION.**

**SC 728.**

Supreme Court of Alabama.

Jan. 16, 1975.

556

Maurice F. Bishop, Birmingham, for George C. Wallace, Governor, and for the State of Ala.

Oliver W. Brantley, Troy, for appellant Cities and Towns.

Hill, Hill, Carter, Franco, Cole & Black, Montgomery, and Ward W. Wueste, Jr., Durham, N. C., for Gen. Tel. Co. of the Southeast.

HARWOOD, Justice.

On 23 September 1971, General Telephone Company of Alabama (hereinafter referred to as GT of Alabama), filed an application with the Alabama Public Service Commission seeking an increase in intrastate telephone rates from its Alabama customers in the amount of $2,504,450 annually.

GT of Alabama was an Alabama corporation and prior to 31 August 1971 was a wholly owned subsidiary of General Telephone and Electronics Corporation, hereinafter referred to as GTE.

General Telephone Company of the Southeast, hereinafter referred to as GTSE, is an operating company and a wholly owned subsidiary of GTE. GTSE is qualified to do business in Alabama.

GTSE acquired the stock in GT of Alabama and effective 1 September 1971, GT

of Alabama became a wholly owned subsidiary of GTSE. GTSE also is the operating company for General Telephone Company of Georgia, General Telephone Company of North Carolina, Pee Dee Telephone Company and Mutual Telephone Company, all of which were merged into GTSE at the end of 1970. Each of the above companies, including GT of Alabama were under the common management of GTSE prior to their mergers.

The debt-equity ratio of GTSE is about 45% debt and 55% equity, while that of GT of Alabama prior to the merger was 30% debt and 70% equity.

The petition for increased rates filed by GT of Alabama alleged that its continued investment in telephone plants and facilities since its last rate increase, together with the increased costs of materials, wages, and supplies, resulted in a rate of return to GT of Alabama of 6.64%, which was inadequate to enable the company to fully perform its duties to the public. The petition further alleged that a fair rate of return to GT of Alabama should be not less than 9.4% and the proposed rate increase of $2,504,450 would produce a rate of return of 9.35% on the reasonable value of GT of Alabama intrastate property devoted to public use.

On 27 October 1972, the Commission established a reasonable test period to be used in its consideration of the petition to be the year ending 31 May 1971.

Hon. George C. Wallace, as Governor of the State of Alabama, and 16 municipalities, and the citizens of those municipalities who were telephone subscribers entered the proceedings as intervenors and actively participated therein.

After several days of hearings, the matter was taken under advisement by the Commission on 21 January 1972.

On 29 February 1972, while the matter was under submission, the GT of Alabama and GTSE filed a petition for merger of GT of Alabama into GTSE, and for the issuance of a certificate of convenience and necessity authorizing GTSE to operate the properties of GT of Alabama. After notice, the petition was heard on 3 April 1972.

On 18 April 1972, the intervenors filed a petition for further hearing on the petition to increase rates and in the alternative for the incorporation of the merger proceedings in the present rate proceedings. No action was taken on this petition, and on 19 April 1972, the Commission confirmed and approved the merger, and granted to GTSE a certificate of convenience and necessity to operate the telephone properties of GT of Alabama, "and to acquire all the operating rights and privileges belonging thereto. The rates for telephone service now in effect in each of the telephone exchanges affected hereby shall continue until otherwise ordered by the Commission."

Following the order approving the merger, the intervenors on 5 May 1972, filed a petition to dismiss the application filed by GT of Alabama, or, in the alternative that further hearings be had on the petition to increase rates. The Commission took no action on this petition. The petition of 5 May 1972, among other things, asserted that prior to 31 August 1971, GT of Alabama was a wholly owned subsidiary of GTE, and on 1 September 1971, just prior to filing a petition for increase in rates, GT of Alabama became a wholly owned subsidiary of GTSE, which resulted in a change of parties. (GTSE had acquired all of the stock of GT of Alabama on 31 August 1971.)

On 27 October 1972, a majority of the then Commission (Connor and Owen) issued an order granting an annual increase in operating revenue of $1,435,970 to GTSE.

Commissioner McDaniel dissented setting forth several reasons among which are that the record did not justify the in-

crease and that there was a complete change in parties.

The Commission majority found that the income available for return on 31 May 1971 was $2,941,263. Since the investment by the company was to be computed through the year ending 31 May 1972, it was necessary to determine the income which the additional investments made in the year of 31 May 1971 to 31 May 1972, would produce. The company introduced evidence tending to show that its main stations would grow by 4,875 during the projected year, and increase in income factor would be 1.072143. The Commission found this projection acceptable. The Commission further found toll revenues under this formula would impute an additional $248,724, but that with such additional revenue calculated on the intrastate (Alabama) rate base of $44,771,378 at the end of the test year would amount to a rate of return of 7%. The Commission found this rate of return insufficient to support the programs the utility must carry on, and that a rate of return in the range of 8.50% to 8.75% would be reasonable. The Commission thereupon found that a rate of return of 8.58% would be reasonable, and so fixed the rate of return. This rate of return is not challenged on this appeal. The Commission on the basis of such rate of return further fixed an annual increase in intrastate operating revenue to GTSE in the amount of $1,435,970, instead of in the amount of $2,504,450, as requested in the application. This was on the intrastate rate base of $44,771,378.

The order of the Commission was appealed to the Circuit Court of Montgomery by both the intervenors and the company.

After consideration of the record, oral arguments, and what the appellants describe as "multiple briefs," the Circuit Court found that the Commission did err in its order "as to the following specific issues * * *"

The specific aspects of the Commission's order found to be erroneous by the court were discussed in detail, with reason and calculations demonstrating and substantiating the court's conclusions that in the named instances the Commission erred. The net result was that the court found that the order of the Commission allowing a rate increase of $1,435,970 was excessive in the amount of $208,924. The case was thereupon remanded to the Commission for the purpose of entering a proper lawful order in accordance with the decree of the court.

Since the court's action in specific instances resulting in a reduction in the rate increase allowed by the Commission was adverse to the company, and no appeal was perfected by the company from the order of the court, we see no necessity for setting out in detail the reasons and calculations by which the court arrived at its conclusions in these instances.

As to refund of the amounts already paid under the Commission's order, which was found to be excessive in the amount of $208,924, the court below found and decreed:

"The Court is of the opinion that the only time the Court could order a refund is when a supersedeas bond is made. The Court can find no provision for reparation in the statute applicable to the facts in the case, so no refund is due. The Court having decided this point, no duty rests on the Court to decide the issues of attorney fees."

The limits and standards of our review on appeal from an order of a circuit court upholding an order of the Alabama Public Service Commission was stated as follows in Floyd & Beasley Transfer Co., Inc. v. Alabama Public Service Commission, 276 Ala. 130, 159 So.2d 833:

" * * * The order of the Commission is taken as prima facie just and rea-

sonable, Title 48, Sec. 82, Code of 1940, and the burden is on the party who would upset the order of the Commission. Alabama Public Service Commission v. Atlantic Coast Line R. Co., 253 Ala. 559, 45 So.2d 449. Also, findings of the Commission will not be overturned if supported by legal evidence of substantial weight and probative force. Alabama Public Service Commission v. Higginbotham, 256 Ala. 621, 56 So.2d 401; Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409; North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183. * * * This Court has made it clear in the Rookis case, supra, as well as in the case of Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So.2d 721, that courts must guard against a substitution of their own judgments of findings of fact for the judgment of the Commissioners. * * *"

See also Hiller Truck Lines, Inc. v. Alabama Public Service Commission, 292 Ala. 161, 290 So.2d 649, citing with approval the above statement from Floyd & Beasley v. Alabama Public Service Commission, supra.

■ The legislature has committed to the Alabama Public Service Commission matters of vast public interest. Among these powers are the regulation of utilities and their rates, and the regulation of transportation over both railroads and highways. Presumptions are indulged in favor of the orders of the Commission. Alabama Public Service Commission v. Redwing Carriers, Inc., 281 Ala. 111, 199 So.2d 653.

■ The ultimate question in a rate case is a fair rate of return from a predetermined rate base. Various formulae and complicated calculations have been developed by experts in the field of rate making in determining first, a reasonable rate base, and second, a fair rate of return on such reasonable rate base. In State of Alabama et al. v. Southern Bell Telephone and Telegraph Co., 274 Ala. 288, 148 So.2d 229, we quoted the following from the book "A Telephone Rate Case" by E. D. Smith:

"What will constitute a fair return in a given case is not capable of exact mathematical demonstration. It is a matter more or less of approximation, about which conclusions may differ; * * *"

In the opinion in State of Alabama et al. v. Southern Bell Telephone and Telegraph Co., supra, at page 297, 148 So.2d at page 237, this court wrote:

"The above, we think, demonstrates the difficulties confronting the court in the determination of a rate case. The record in such a case is abundant with the testimony of experts who demonstrate their conclusions by varied formulae and computations. The ultimate question of a fair rate of return should not be a composite of the results mechanically reached by these formulae, with little regard given to the question sought to be determined, that is, the fair rate of return."

With the above observation as to principles governing our present review, we now look to the assertions of error which appellants contend infected the proceedings below.

Under assignments of error 1–7 and 30, the appellants question the basic validity of the order of the Commission in granting an increase in intrastate rates to GTSE upon an application for such increase filed by GT of Alabama, a separate corporation. Under these assignments the appellants also assert that the Commission erred in ignoring their petition of 18 April 1972, wherein they sought further hearings in the rate case, or in the alternative, for incorporation in the rate hearing of the record in the merger proceedings involving

GT of Alabama and GTSE, and further that the Commission erred in denying appellants' petition of 9 May 1972, for dismissal of the application of GT of Alabama, or for further hearing on the basis of the merger proceedings.

To recapitulate, GTSE had acquired all of the stock in GT of Alabama, and therefore GT of Alabama was a wholly owned subsidiary of GTSE prior to the filing of the application by GT of Alabama for the rate increase. For several years prior GT of Alabama had been managed by GTSE, the officials of the two companies being the same.

On 21 January 1972, after several days of hearings and the introduction of voluminous exhibits, the application for the intrastate rate increase was taken under submission.

On 29 February 1972, the application for merger of GT of Alabama into GTSE was filed. The matter was set for hearing and notices given. At the hearing on the merger application some of the appellants were present and participated therein.

On 19 April 1972, the Commission approved the merger application, and issued a certificate of convenience and necessity to GTSE authorizing GTSE to operate the telephone properties of GT of Alabama, "and to acquire all the operating rights and privileges belonging thereto."

The application for increased rates was taken under submission on 21 January 1972.

The application for merger, and the petitions to reopen the rate hearing all came after the original application for the rate increase had been heard and submitted to the Commission.

■ Ordinarily, it is within the discretion of a court whether to admit further evidence after the testimony has been closed. James v. Tait, 8 Port. 476; Patterson v. Alabama Fuel & Iron Co., 194 Ala. 278, 69 So. 952; Atlanta Life Ins. Co. v. Ash, 228 Ala. 184, 153 So. 261; Bundy v. Echols, 239 Ala. 421, 195 So. 439.

■ To have reopened the hearings would have involved the initiation of an entirely new rate case, involving a new test year, and the preparation of an entirely new rate base, and a new projection of investment to be added after the new test year period. With the lag inherent in the regulation process, and the inflation of the last few years which continues unabated, we find no basis for concluding that the Commission erred in granting the petition for merger, and in not considering the collateral motions of the appellants to reopen the hearing already concluded.

Although there was no attempt to amend the application for a rate increase by substituting GTSE for GT of Alabama as provided under Section 239, Title 7, Code of Alabama 1940, implicit in the merger order issued by the Commission was the fact that GTSE was acquiring all of the properties, rights, and privileges of GT of Alabama, including the right to continued operation of the telephone business of GT of Alabama and that the merger order spelled the end of GT of Alabama.

■ Section 21(71), Title 10, Code of Alabama 1940, provides, among other things, that upon consolidation or merger of corporations, the rights, privileges, powers, franchises, and all property, real, personal or mixed, and all debts due on any account, as well as for stock subscriptions, and all other things in action belonging to each of the several consolidating or merging corporations, shall be vested in the corporation resulting from or surviving such consolidation or merger. An appellate court should view with less strictness the procedural aspects of proceedings before an administrative body than when dealing with procedural aspects occurring

in a lower court. Section 73 C.J.S. Public Administrative Bodies and Procedure § 230, p. 602.

■ While technically there was no motion to substitute GTSE for GT of Alabama, we conclude that in view of the Commission's action in approving the merger and the results flowing from such approval, the action of the Commission in granting a rate increase to GTSE and the application filed by GT of Alabama should be considered under the circumstances of this case as nothing more than a proper substitution of one party who has acquired the total interests of the originating party for whom he, or it, is substituted. We hold there was no change of parties resulting from the action of the Commission in this aspect.

Under these assignments appellants argue that the Commission erred in ignoring their petitions for further hearings after the merger order. As stated in appellants' brief:

"The poles, telephones and physical plant of GT of Alabama remained the same when transferred to GTSE. But the CAPITAL supporting this plant was structured altogether differently and at a different cost. * * * In the merger proceeding, it was admitted by Company witnesses that operating efficiencies and economies would immediately result from the merger. The operating costs of GTSE were not used. * * *"

In State ex rel. Utilities Commission v. Lee Telephone Co., 263 N.C. 702, 140 S.E. 2d 319, the Supreme Court of North Carolina considered a question highly similar to the one here presented. The North Carolina Supreme Court concluded, at 140 S.E.2d 324:

"The Utilities Commission of this State does not have the right to fix less than a reasonable or fair rate of return on the *Company's investment in North Carolina* because the Utilities Commis-

sion in Virginia may have fixed rates in that State which, in the opinion of the Utilities Commission in this State, gives the Company a reasonable return on its entire properties when its Virginia and North Carolina revenues are combined. Smyth v. Ames, supra [169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819].

"In the case of Corporation Comm. v. Cannon Mfg. Co., 185 N.C. 17, 116 S.E. 178, in considering the same question involved here, this Court held:

" ' * * * (T)he Corporation Commission (now the Utilities Commission) in this state is empowered and directed *to make reasonable and just rates as applied to the distribution and sale of power in this state and not otherwise,* and such power cannot be directly controlled or weakened by conditions existent in other states, either from the action or nonaction of official bodies there, or the dealings between private parties. To hold otherwise would in its practical operation be to withdraw or nullify the powers that the statute professes to confer and should not for a moment be entertained. * * *'

"In United Gas Pipe Line Co. v. Louisiana Public Serv. Comm., 241 La. 687, 130 So.2d 652, the Supreme Court of Louisiana recently said:

" ' * * * *"(T)he reasonableness of the rates to be fixed by the state must be decided with reference exclusively to what is just and reasonable in respect of domestic business."* '

"*When a company operates in two or more states, the operations are treated as separate businesses for the purpose of rate regulation.* An inadequate return in Virginia would not of itself justify a rate increase in North Carolina, nor would a high rate of return in Virginia justify less than a fair and reasonable rate in North Carolina. G.S. § 62–133." (Emphasis ours.)

**564**

To this same effect see also Re Montana-Dakota Utilities Company, 78 Pur.N.S. 33; Re Manufacturers Light & Heat Company, 11 Pur.3d 28.

■ We are in accord with the above holdings. It follows therefore that we conclude that the Commission did not err in ignoring appellants' petition to grant further hearings, in that the Commission could properly be concerned only with a fair rate of return resulting from the operation of the telephone properties located within this state and produced by its intrastate operations.

Assignments of error 11 and 12 raise the questions of whether the intervenors had the right to, (1) introduce evidence of savings from the filing of a consolidated income tax return by GTE and GT of Alabama, and, (2) whether the appellants should have been permitted to show that the Commission had applied such savings in other utility cases.

As to the second point (2) above, counsel for appellants assert that the Commission's attention was specifically directed to page 223(a) of the 1971 Annual Report of the Alabama Power Company made to the Commission wherein the Power Company passed on to the consumer the benefits arising out of a consolidated tax return; that in the South Central Telephone Company case (now on appeal) the Commission received such evidence, but refused to give effect to the income tax savings resulting from the consolidated income tax returns, and then in the present case the Commission would not receive such evidence.

This, counsel argue, amounted to granting to one person the right to do that which it denies to another similarly situated, and amounted to arbitrary treatment.

■ As to the 1971 Annual Report of the Alabama Power Company, it appears that during the cross-examination of a company witness an effort was made to introduce a page from the above mentioned 1971 Annual Report through this witness. He testified he was not familiar with the Southern Company, Alabama Power Company's parent company. With such meager predicate, we cannot say the Commission erred in denying the admission of the document.

In the South Central Telephone Company case (now on appeal) the evidence pertaining to a consolidated income tax return was received, but accorded no effect by the Commission as to the savings resulting therefrom.

■ Thus actually, the South Central Telephone case above mentioned was the only case properly before the Commission as to the effect to be given savings resulting from a consolidated income tax. No effect was given to such evidence in the South Central case. The court refused to receive such evidence in the present case. Having refused to give effect to such evidence in the South Central case, a refusal to accept evidence of savings from a consolidated income tax in the present case is hardly to be considered as inconsistent.

■ While consistency in administrative rulings is essential if arbitrariness is to be avoided, yet, as stated in Mobile County Gas District v. Mobile Gas Service Corp., 284 Ala. 664, 227 So.2d 565, where this court quoted with approval from WOKO, Inc. v. Federal Communications Commission, 80 U.S.App.D.C. 333, 153 F.2d 623, 631:

"The doctrine of stare decisis does not apply to decisions of administrative bodies such as the Communications Commission, but radical departures from administrative interpretation consistently followed cannot be made except for most cogent reasons. * * *"

■ As to the basic question of whether savings resulting from the filing of a consolidated income tax return should be

passed on to the consumers, the appellants state in brief:

"In South Central Bell Telephone Co. v. Tennessee Public Service Comm., 100 PUR 3d 45, the reviewing court [Tennessee Chancery Court] noted there is a split of appellate authority on the issue of whether savings resulting from filing consolidated income tax returns should be passed on to the consumers."

This being so, we are unwilling to say that the Commission abused its discretion in allowing the federal income taxes due by GT of Alabama as part of the operating expenses of the company.

Assignment of error No. 13 pertains to the action of the Commission in allowing the company to charge the annual amortization of the telephone plant acquisition adjustment in the amount of $113,058.00 as an operating expense in arriving at the company's income available for return.

The telephone plant acquisition adjustment is the excess over the original cost of the plant which GTSE paid for the properties when it acquired the same from GT of Alabama.

Under the accounting rules of the Commission this excess is required to be placed in a separate account entitled "Telephone Plant Acquisition Adjustment," and this was done.

It is the contention of counsel for the appellants that since this item is disallowed for federal income tax purposes, the same should have been disallowed by the Commission as an operating expense, and if such had been done, the effect would have been to increase the net operating income of the company for rate making purposes by $113,058.00 insofar as the intrastate portion of the net operating expenses of the company were concerned.

Witnesses for the company testified that because of the position taken by the Commission in a 10 March 1969 order excluding from the rate base the telephone plant

acquisition adjustment, and disallowing the same, the company was not in the present hearing asking for a return on the telephone plant acquisition amount.

Counsel for appellants assert on this appeal that the company did include the annual amortization of telephone plant acquisition as an expense in determining its book income. This, says counsel for appellants, had the effect of reducing book income for rate making purposes by that amount.

Counsel for appellee contend that the telephone plant acquisition adjustment was an investment by the company and is properly accounted for on the books of the company under the Commission's accounting rules, and that under both FCC rules and Commission rules the telephone plant acquisition adjustment is being properly amortized.

This contention was the subject of considerable cross examination of a witness for the company in the hearing before the Commission.

Again, counsel for appellants contend that because the item was excluded from the rate base in 1969, it was arbitrary for the Commission to allow the same as an item of operating expense in the present proceedings. Counsel for appellants cite Harrisburg Steel Corp. v. Pennsylvania Public Utility Commission, 176 Pa.Super. 550, 109 A.2d 719, decided in 1954, as supporting authority for their contention.

On the other hand, counsel for the company cite American Tel. and Tel. Co. v. United States, 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142, as approving, or certainly allowing, the action of the Commission in permitting the amortizing of the telephone plant acquisition adjustment as was done in this case.

 As before stated, prior orders of the Commission are not res judicata. This for the reason that rate making is a legislative and not a judicial function. City of Birmingham v. Southern Bell Tel. and Tel. Co., 234 Ala. 526, 176 So. 301.

The legislature, of course, has wide discretion, and its acts are conclusive so long as they are within the constitutional limits imposed on the legislature in performing its functions. As stated in the *City of Birmingham* case immediately supra:

"The Legislature may fix the rates or it may empower an agency, such as the Public Service Commission, to act in its stead in this regard. In either event, the courts are open for one who complains that by the exercise of the rate-making power he has been deprived of property without due process of law or that his private property has been taken for public use without just compensation. The courts act, therefore, for the purpose of holding the exercise of this legislative power within constitutional limits (Const.1901, §§ 13, 23), but not for the purpose of making rates or substituting their judgment for that of the legislative agencies."

■ The treatment of the item as an operating expense would also appear to be justified by the following language in Alabama Public Service Commission v. Southern Bell Tel. and Tel. Co., 253 Ala. 1, 42 So.2d 655:

"3. In the absence of a showing of inefficiency, improvidence, waste or bad faith on the part of management, the Commission cannot legally ignore the necessary fair and reasonable expenses of operations incurred in the rendition of service by the utility but must give heed to, consider and allow all such expenses constituting charges upon income during the term of the regulation.

"4. Only where affirmative evidence is offered challenging the reasonableness of the operating expenses incurred, on the ground that they are exorbitant, unnecessary, wasteful, extravagant, or incurred in the abuse of discretion or in bad faith, or are of a nonrecurring character not likely to recur in the future, has the commission a reasonable discretion to disallow any part of the expenses actually incurred.

"In Missouri ex rel. Southwestern Bell Telephone Company v. Public Service Commission, 262 U.S. 276, 43 S.Ct. 544, 547, 67 L.Ed. 981, 985, 31 A.L.R. 807, the Court said:

"'* * * The applicable general rule is well expressed in State Public Utilities Commission ex rel. Springfield v. Springfield Gas & E. Co., 291 Ill. 209, 234, 125 N.E. 891, 901; [P.U.R. 1920C, 640]:

"''The commission is not the financial manager of the corporation, and it is not empowered to substitute its judgment for that of the directors of the corporation; nor can it ignore items charged by the utility as operating expenses, unless there is an abuse of discretion in that regard by the corporate officers.''"

We find no justifiable basis for reversal of the order of the Commission because of the matters raised by assignment of error No. 13.

Assignments of error Nos. 18–21 relate to a tax rider appearing in a former tariff schedule filed with the Commission by the company. The application of this rider would permit the company to automatically pass on to its Alabama subscribers, without further notice of hearing, all income tax increases or decreases.

The record shows that tax rider charges were removed from the customer's bills effective June 1970. On 1 November 1972, a new tariff was filed by the company with the Commission which superseded the former tariff. No tax rider appears in the new tariff. Therefore no new tax rider charges can now be made without a new tariff being filed and approved by the Commission.

The test period revenues do not reflect any tax rider charges, and since no such charges have been made to the customers since June 1970, and cannot now be made

under the new tariff, the point or points sought to be presented under assignments 18–21 are moot. The chief argument for appellants' counsel under these assignments seems to be dissatisfaction that the Commission made no finding as to the tax rider, and that the court below "by its silence, erroneously acquiesced." The mootness of the points raised would justify their being ignored by both the Commission and the court below. We find no merit in assignments 18–21.

Assignments of error Nos. 22 and 24 charge error in the decree of the lower court in failing to reverse that part of the Commission's order which in effect approved, without a hearing, a tariff schedule which permitted GT of Alabama to increase its intrastate long distance toll charges on the basis of increases granted by the Commission to South Central Telephone Company. Such Commission order, effective on 22 February 1971, was done without suspension, notice of hearing, or opportunity to be heard. In other words, by virtue of this order the intrastate long distance tolls of GT of Alabama would "track" the South Central Bell rates.

Argument of counsel for the intervenors is premised upon the contention that to permit an increase in the rates for intrastate tolls by tying the same to rates allowed South Central Bell is a violation of Section 53, Title 48, Code of Alabama 1940, in that such increase is granted without notice or hearing.

Section 53 reads:

"Whenever a utility desires to put in operation a new rate or service regulation or to change any existing rate or service regulation, it shall file with the commission a new schedule embodying the same, not less than thirty days prior to the time it desires to make the same effective; but the commission may, upon application of the utility, prescribe a less time within which the same may be made effective. In the absence of suspension or disapproval by the commission, as herein provided, the new rate or service regulation, embodied in any such new schedule shall become effective at the time specified in such schedule, subject however to the power of the commission at any time thereafter to take any action respecting the same authorized by this title. (Ib.)"

Under the terms of Section 53 no notice or hearing is required for putting a proposed tariff schedule into effect.

It is to be noted that Section 54, Title 48, Code of Alabama 1940, does provide that if in the opinion of the Commission the public interest requires an investigation of a tariff schedule to be made, the Commission, in its discretion, may suspend the operation of such proposed tariff schedule for a period not exceeding six months. Section 54 further provides that unless as a result of its investigation, the Commission orders otherwise before the termination of the sixty-day period, such tariff schedule becomes effective.

No such action was taken by the Commission in this case, and therefore the proposed tariff schedule filed by GT of Alabama adopting the rates of South Central Bell became effective, and no notice or hearing was required under the terms of Section 53 to effectuate such schedule.

According to the testimony of F. Gordon Maxson, Vice President of GT of Alabama and of GTSE, South Central Bell places before the Commission information pertaining to the revenues generated by General Telephone when South Central Bell's tariff proposals are considered. Such procedure is true in all states in which General Telephone operates, and is true all over the country since 1970. Permitting GT of Alabama to track South Central rates as to intrastate tolls will ultimately affect General Telephone's rate of return.

Uniformity of such rates for different companies is desirable. As stated in

**568**

Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 47 So.2d 455:

"The rate of return must be equal to that generally being earned by others in the same general locality in business undertakings attended by corresponding risks and uncertainties. It must be sufficient to assure the investors' confidence in the financial soundness of the enterprise and enough to maintain and support its credit, so that the utility will be able to raise the necessary capital to improve and expand its service in the discharge of its public duties. All of this presupposes efficient, economical and honest management. * * *" (Citations omitted).

■ We find no basis for reversing the order of the Commission because of the point raised by assignments of error Nos. 22 and 24.

Appellants' assignment of error No. 23 reads that the court erred in:

"Failing to direct the Commission (53–57) to correct the erroneous computation of additional toll return received by the Company through monthly settlements with South Central Bell Telephone Company effective August 1, 1971, which said omission had the effect of reducing return actually received by the Company (R. 260–272, 273–281, Ex. 35)."

This assignment was amended by adding at the end thereof references to pages 681–707 also.

The verbiage of this assignment is somewhat general, and the reference to the numerous transcript pages increases its generality, virtually to the point of making this assignment faulty.

However, we will treat the same in light of appellants' argument under this assignment.

While the assignment seems to complain of the terms of the "settlement agreement"

between South Central and GT of Alabama, this argument overlooks the tariff schedule which became effective on 22 February 1971, mentioned above, which permitted GT of Alabama to increase its intrastate long distance toll charges on the basis of increases granted by the Commission to South Central.

In this connection, the order of the Commission now being considered, under the general heading of "Revenues," reads in part:

"The Company derives its toll revenue through a division of revenue contract with South Central Bell Telephone Company where the toll revenues from customers of both companies are pooled, expenses taken out, and General Telephone further compensated by receiving a return on its intrastate toll investment equal to South Central's rate of return. On July 12, 1971, this Commission issued an order in Docket No. 16392 granting South Central Bell additional rates. The effect of this order has been to increase the so-called "settlement ratio" between General and South Central.

"The Company made no adjustment for this additional revenue at the time of filing. At the hearings, it was brought out that the settlement ratio through December 1971, was 8.48% on an annual basis. This is less than, but approximately, the rate of return we found for South Central in its rate proceedings of last year. From the best evidence available to us, it appears General will earn an additional $248,724 in intrastate toll revenue as a result of the South Central increase. We adjust the revenues accordingly.

"We find that even after we impute an additional $248,724 in toll revenues to the utility, the Company's rate of return will be only 7% on a rate base of $44,771,378 at the end of the test period, and income available for return of $3,153,455. This is insufficient to support the programs the utility must carry

on. The Commission finds the range of reasonableness for the utility to be from 8.50% to 8.75%. The appropriate rate of return for the utility we fix at 8.58%. As expressed by the Supreme Court in Federal Power Commission v. Hope Natural Gas, 'under the statutory standards of "just and reasonable" it is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts;' 320 U. S. 591, 64 S.Ct. 281, 88 L.Ed. 333, 345.'"

As stated in appellants' brief:

"The Commission order adjusted the revenues of GT of Alabama so as to give effect to 'an additional $248,724 in intrastate toll revenues as a result of the South Central increase.' * * * The Commission then added the return portion of this revenue adjustment ($122,347) to income available for return at the end of the test period. * * *"

It appears that of the $248,724 found to be due GT of Alabama by virtue of "tracking" South Central's rates, the Commission adjusted and reduced GT of Alabama's revenue to permit a revenue adjustment of $122,347, rather than $248,724, as income available for return to GT of Alabama at the end of the test period. The Company not having appealed, and this adjustment being adverse to it, no need arises to consider this adjustment by the Commission.

In their argument under this assignment (assignment No. 23), counsel for appellants assert:

"It is important to note and remember that there was no evidence in this record to justify applying the identical return allowed South Central on its entire Alabama plant to the intrastate toll plant of GT of Alabama. * * *"

We disagree. The Commission could of course take notice of its order establishing the same rate for intrastate tolls for South Central and GT of Alabama. Additionally,

there was evidence before the Commission showing that uniform rates between different telephone companies operating in the same state are desirable, and that such orders seeking to bring about such uniformity have been disapproved, and are in general use throughout the country. As an example, the effect of such uniform rates is to assure that a customer in Dothan, Alabama, where GT of Alabama operates, calling Montgomery, Alabama, would pay the same rate for such a call as would a customer of South Central, operating in Montgomery, calling Dothan.

Section 82, Title 48, Code of Alabama 1940, specifically provides, among other things, that:

"The commission's order shall be taken as prima facie just and reasonable. * * *"

■ We are not convinced by appellants' argument that the action of the Commission in this instance was capricious or arbitrary, and should be disturbed by us.

Under assignments of error Nos. 26 and 28, counsel for appellants argue that the Commission erred in applying a rate of return calculated on invested capital rather than on a statutory rate base. By a series of complicated calculations, counsel arrives at the conclusion that had the rate of return been applied to the proper statutory rate base, it should have been computed at 8.36% rather than the rate of return fixed by the Commission at 8.58%. This return of 8.58%, says counsel, was the result of including cost free funds therein. Counsel refers to X-33 in support of this statement. The record shows that an Exhibit 33 was identified and later "accepted subject to the rule."

The Commission order as to the fixing of the rate base reads:

"The Company also presented evidence of its new investment to be added to the year immediately following May 31, 1971.

"The original cost of the Company's property used and useful in providing intrastate service as of the most recent date available, May 31, 1971, is $50,636,185, and the amount of the new investment to be added in the year immediately following May 31, 1971, is $2,564,316. We find telephone plant held for future use and the depreciation reserve, claimed by the Company in the amounts of $10,130 and $9,407,709 respectively, are properly computed. We find these amounts to be properly includable in the rate base.

\* \* \* \* \* \*

"\* \* \* Accordingly, we establish an intrastate rate base as of May 31, 1971, under Title 48, Section 54, Code of Alabama (Recompiled 1958), to be as follows:

"Telephone Plant in Service $50,636,185
Telephone Plant under
 Construction 2,564,316
Property Held for Future
 Telephone Use 10,130
Less-Depreciation Reserve 9,407,709
Materials and Supplies 818,456
Cash Working Capital 150,000
 $44,771,378"

It is to be noted that while the Commission stated that the item of $9,407,709 was properly includable in the rate base, such item was listed, and removed, in calculating the rate base of $44,771,378.

Company witness L.E. Orstad, Treasurer of GT of Alabama, and of GTSE, gave extensive testimony as to studies he had made concerning the rate base and rate of return which he contended should be allowed as a result of his studies. In connection with Exhibit 33, the record shows the following during Mr. Orstad's examination:

"A. As shown on Orstad Exhibit No. 33 (placed on easel), the cost of capital to the company, calculated on the basis of the tests I have made is 9.44 per cent to 10.12 per cent.

"Based on these calculations, I recommend a fair rate of return range of 9.4 per cent to 10 per cent on the rate base for General Telephone Company of Alabama."

Mr. Orstad further testified that a rate of return in the above area was essential for the economical management of the company for the enlarging of its plant facilities and equipment, and in order to provide adequate service to its customers.

The Commission did not allow a rate of return within the range contended for by Mr. Orstad, but instead fixed it at 8.58 per cent.

 All in all, and after a study of the evidence presented, and reasonable inference therefrom, we conclude there was substantial evidence to support the rate base of $44,771,378 established by the Commission. We further hold that the rate base was established in conformity with Section 52, Title 48, Code of Alabama 1940, as amended by Act No. 97, found in 1971 Acts of Alabama, First Ex.Sess., p. 171.

Section 52, Title 48, Code of Alabama 1940, as amended by Act No. 97, may be found in the 1973 Cumulative Supplement, Vol. 10, p. 362 of 1958 Recompiled Code of Alabama, and in parts pertinent to this review, now reads:

"The rates and charges for the services rendered and required shall be reasonable and just to both the utility and the public. Every utility shall be entitled to such just and reasonable rates as will enable it at all times to fully perform its duties to the public and will, under honest, efficient and economical management, earn a fair net return on the reasonable value of its property devoted to the public service. For the purpose of fixing rates such reasonable value of a public utility's property shall be deemed to be the original cost thereof, less the accrued depreciation, as of the most recent date available, and the amount of

the new investment to be added in the year immediately following the test period used in arriving at the value of such utility's property. In any determination of the commission as to what constitutes such a fair return, the commission shall give due consideration, among other things, to the requirements of the business with respect to the utility under consideration, and the necessity, under honest, efficient and economical management of such utility, of enlarging plants, facilities and equipment of the utility under consideration, in order to provide that portion of the public served thereby with adequate service. * * *"

In view of the above, there being substantial evidence tending to support the Commission's order fixing the rate base, the order is due to be affirmed in this aspect. North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183; Alabama Electric Coop., Inc. v. Alabama Power Co., 274 Ala. 332, 148 So.2d 613; Floyd & Beasley Transfer Co. v. Alabama Public Service Commission, 276 Ala. 130, 159 So. 2d 833.

■ As to the action of the Commission in fixing a rate of return of 8.58%, this court in Alabama Public Serv. Com'n v. Southern Bell T. & T. Co., 268 Ala. 312, 106 So.2d 163, as a guide to the Commission after remandment, quoted the following from Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S. Ct. 281, 88 L.Ed. 333:

" * * * It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. * * *"

We do not intimate that the Commission order in the present case contained infirmities, but we are clear to the conclusion that the evidence was entirely sufficient to support the rate of return as fixed by the Commission.

Under assignment of error No. 27, counsel for appellants contend that the Commission erred in including in the rate base the sum of $818,456, for "Materials and Supplies," and the sum of $150,000 for "Cash Working Capital."

In brief counsel state that in a previous hearing concerning GT of Alabama the Commission, by order on 10 March 1969, (Docket 16048), had refused to include in the rate base the sum of $779,497 for "Materials and Supplies," and had reduced GT of Alabama's request for $584,216 for "Cash Working Capital" to $50,000. As to the item "Materials and Supplies," the Commission in the 1969 hearing found that substantial amounts of construction materials in the "Materials and Supplies" account were offset by open accounts payable to suppliers at no cost to the petitioners. The Commission further found that the request that $584,216 "Cash Working Capital" was grossly exaggerated and reduced this item to $50,000 in the rate base.

Counsel again insist that the allowance of $818,456 for "Materials and Supplies," and $150,000 for "Cash Working Capital" in the rate base in the present proceedings amounted to such a glaring inconsistency with the 1969 order of the Commission as to negate the validity of the rate base.

Counsel for appellants make no point as to the inclusion in the present case of $355,981, representing salvaged central office equipment in the "Materials and Supplies," but contend that the balance of $462,471 left, after deducting the properly allowed $355,981, was improperly included in the rate base.

We again reiterate that the Commission's action in the rate making is legislative, and therefore each case is to be considered on its own particular facts.

■ In the present case Mr. Gawronski, General's Vice President-Controller,

testified that materials and supplies in the amount of $818,456 were on the company's books at the end of the test period. This included poles, cables, wire, and salvaged central office equipment. With the exception of the salvaged central office equipment (unquestioned by the petitioners), the remaining materials and supplies were necessary and used in day to day maintenance and construction work in Alabama. Such supplies were necessary because of General's improvement program which generated a substantial requirement for the on-hand materials. Mr. Gawronski gave as part of such requirements that General had on hand $452,692 worth of cable which was being put in use at about the rate of $150,000 per month for interstate and intrastate construction. This testimony was uncontroverted. We find no abuse of discretion in the allowance of the $818,456 item in the rate base for "Materials and Supplies."

Likewise, there was substantial evidence justifying the allowance of $150,000 for "Cash Working Capital." In fact counsel for the appellee contends that the evidence was sufficient to support the entire $719,471 request as part of the rate base, notwithstanding the Commission's allowance of only $150,000 for this item in the rate base. The allowance of $150,000 for "Cash Working Capital" was, under the evidence, a matter for the Commission.

There can be no doubt that "Materials and Supplies" and "Cash Working Capital" are items properly includable in determining a rate base. See Re Diamond State Telephone Co., 21 PUR 3d 417; State v. Southern Bell Telephone and Telegraph Co., 274 Ala. 288, 148 So.2d 229.

Appellants' assignments of error Nos. 14–17, and 29, assert that the Commission erred in projecting that the company's main stations would grow by 4,875 from May 1971 to May 1972 (the year following the test period), and that the projected income would be increased by a fac-

tor of only 1.072143. In its order the Commission stated: "We find this acceptable."

It is the contention of counsel for appellants that the income projection factor of 1.072143 is too low. In support of their argument in this respect, appellants largely rely on exhibits prepared by their witness.

Counsel for appellants contend that the company will enjoy a substantial net gain in revenue from main station growth, and from the Station Improvement Program involved therein. Counsel for the company contend there will be no substantial increase in revenues because the evidence shows offsetting losses due to elimination of mileage charges.

The witness for the appellants who prepared the exhibits stated on cross-examination that the exhibits failed to reflect offsetting expenses such as depreciation and loss of mileage charge revenue due to rate base organization.

The actual net increase of revenue during the test period was only $2,048.15, and was included in the income available for return.

Again, we refer to that portion of the Commission's order reading:

"We find that even after we impute an additional $248,724 in toll revenues to the utility, the Company's rate of return will be only 7% on a rate base of $44,771,378 at the end of the test period, and income available for return of $3,153,455. This is insufficient to support the programs the utility must carry on."

Under the contradictory state of the evidence before us, and giving to the order of the Commission the presumption required, we are not in position to say that any reversible error arises under assignments of error Nos. 14–17, and 29.

Under assignments of error Nos. 8 and 9, counsel for appellants assert that, when on appeal from an order of the Commission approving a rate increase in a utility

case, such increased rates are judicially disapproved in part, the utility must refund to the subscribers such portion of the rate increase as may be judicially disapproved. Counsel contends that the court erred in not ordering such refund.

Counsel's argument under this assignment asserts and erroneously assumes that any part of a rate increase ordered by the Commission and collected by the utility which may later be disapproved by a court, is either excessive or unlawful, or both, and any amounts collected by the utility which are later judicially disapproved, must be returned to the subscribers.

The court below declined to order such refund, stating:

"The Court is of the opinion that the only time the Court could order a refund is when a supersedeas bond is made. The Court can find no provision for reparation in the statute applicable to the facts in the case, so no refund is due."

We agree with the court's conclusions in this regard.

Neither this court, nor the circuit court can exercise any powers not authorized by statute in reviewing orders of the Public Service Commission since judicial review of rate making orders is a limited one. Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 119, 47 So.2d 449; Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158; Illinois Central R. Co. v. Thomas Alabama Kaolin Co., 275 Ala. 236, 153 So.2d 794.

It must be remembered that in this case we are dealing with a *Commission prescribed* schedule of rates. Section 84, Title 48, Code of Alabama 1940, states in effect that an appeal without a supersedeas bond does not stay or supersede the order of the Commission. The reason for such rule is stated in T. R. Miller Mill Co. v. Louisville & Nashville R. Co., 207 Ala. 253, 92 So. 797, as follows:

"Such schedules cannot be made unlawful for and during the period of their approved operation by any subsequent retroactive finding and order of the Commission. Such a practice would be odious to the general established notions of justice, and would, moreover, be utterly subversive to the policy and utility of any system of rate regulation; for no rate could be relied upon as stable, and neither carrier nor shipper could ever be certain of the basis upon which business was being conducted."

In Mandel Bros. v. Chicago Tunnel Terminal Co., 2 Ill.2d 205, 117 N.E.2d 774, the Supreme Court of Illinois denied the right to reparations under similar conditions to those we are now considering, saying:

"The fundamental issue in this case is whether a rate which has been approved by the Commerce Commission after a hearing as to its reasonableness can be termed an 'excessive' rate for the purpose of awarding reparations. We hold that *it cannot, even though* the rate approved by the commission has subsequently been *set aside upon judicial review.*

" * * * But rates established or approved by a regulatory body have generally been held to stand upon a different footing. 'Where the charges collected by the carrier were based upon rates which had theretofore been established or approved by the public authority, the fact that such rates are subsequently reduced affords no right of action for damages or for the recovery of the difference between the old and new rates upon the ground that the prior rate was unreasonable, unless such right *is conferred by the governing statute, as is held to be the case in some jurisdictions.'* 9 Am.Jur., Carriers, sec. 175; cf.: Arizona Grocery Co. v. Atchison, Topeka, & Santa Fe Railway Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; Texas Co. v. Chicago & Alton Railroad Co., 7 Cir.,

117 F.2d 210; see cases collected, 97 A. L.R. 406." (Emphasis ours.)

Further, by Section 102, Title 48, Code of Alabama 1940, which section is within the comprehensive regulatory system for transportation companies, telephone companies are placed within such regulations. The last sentence of Section 124 of Title 48 within the statutory scheme for regulating transportation companies provides:

"Reparation shall not be awarded in case of any rate which *has been adjudged* to be just and reasonable and otherwise *lawful* by the commission after investigation had upon due notice and hearing." (Emphasis ours.)

The above controlling principles negative any basis of reversal resulting from assignments of error Nos. 8 and 9.

Finally, under assignment of error No. 10, appellants contend that the court erred in not allowing attorney's fees to counsel for appellants.

The general rule is, there can be no recovery as damages the expenses of litigation, including attorney's fees paid by the opposing party, in the absence of a contractual or statutory duty, other than in a few recognized grounds by equity principles authorizing such liability. Hartford Accident & Indemnity Co. v. Cosby, 277 Ala. 596, 173 So.2d 585.

However, counsel for appellants contend that they are within the influence of Section 63, Title 46, Code of Alabama 1940, which provides in part pertinent to this review:

"* * * where there is involved the administration of a trust * * * the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing * * * any party in the suit or proceeding, and is authorized to tax as a part of the costs in such suit or proceeding such reasonable attorney's fee * * *"

The rates were collected under order of the Commission. They were lawfully collected until set aside by a judicial decree. No supersedeas order has been obtained. Therefore, no trust fund can be deemed to have been created and Section 63, Title 46, Code of Alabama 1940, is not here applicable.

The order of the Circuit Court is due to be affirmed, and it is so ordered.

Affirmed.

All the Justices concur.