HOUSTON, Justice
(dissenting).
POWER! That is what this appeal is about. This appeal does not address in any way the merits of the underlying litigation.
“[Wjhich entity [the attorney general or the commissioner of insurance] controls *685 whether [Mike Weaver, as commissioner of insurance of the State of Alabama] remains a party to the appeal[?]”
This is the issue posited in the majority opinion of the Court of Civil Appeals. To me, the issue is much broader.
Does the attorney general of the State of Alabama under his legislative mandate to direct and control litigation concerning the interest of the- State or any department thereof, Ala.Code 1975, § 36-15-21, have the power to make substantive policy decisions contrary to the decisions of the department or agency that he is representing?
The Alabama Constitution of 1901, Art. V, § 112, as amended by Amendment No. 284, provides:
“The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.”
(Emphasis supplied.)
The Alabama Constitution of 1901, Art. V, § 113, provides:
“The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled ‘The Governor of the State of Alabama.’ ”
(Emphasis supplied.)
Black’s Law Dictionary 1292 (5th ed. 1979) defines “supreme” as “[sjuperior to all other things.” The American Heritage Dictionary of the American Language 1293 (1969) defines “supreme” as “[greatest in power, authority, or rank; paramount; dominant. Greatest in importance, degree, significance, character, or achievement; utmost; extreme. Ultimate; final.” Black’s Law Dictionary, at 511, defines “executive powers”:
“Power to execute laws.... The executive powers vested in governors by state constitutions include the power to execute the laws, that is, to carry them into effect, as distinguished from the power to make the laws and the power to judge them.”
In Martindale v. Anderson, 581 P.2d 1022, 1027 (Utah 1978), the Supreme Court of Utah wrote:
“[Executive powers are policy execution powers. Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or to appoint the agents charged with the duty to make such enforcement. The latter are executive functions. They are the acts necessary to carry out legislative policies and purposes and are deemed acts of administration.”
The Constitution of this State gives the Governor power superior to all others, the ultimate final power, to execute and enforce laws and to appoint the agents charged with the duty to execute laws. “Supreme,” when it appears before the phrase “executive power,” means no less than it does when it precedes the word “court” in § 6.02 of Amendment No. 328 to the Alabama Constitution (“[t]he Supreme Court shall be the highest Court of the State”).
The Alabama Constitution of 1901, Art. V, § 120, further provides: “The Governor shall take care that the laws be faithfully executed.”
Thus, the source document, the Alabama Constitution of 1901, defines the Governor’s power and the Governor’s duty.
In furtherance of these constitutional mandates, the Legislature has confirmed in the Governor the responsibility and concomitant authority to control and to coordinate the affairs and the business o'f the State by recognizing the Governor’s right to control the actions of members of tnP’ executive branch. To ensure tliatf officials in the executive branch o-f-government adhere to the Governor’s policies and submit to his will, the Governor is generally given the authority to appoint and to remove these officials with or without cause.[4]
*686 The Legislature created the Department of Insurance of the State of Alabama (Ate. Code 1975, § 27-2-1) and provided that the commissioner of insurance shall be the chief executive officer of the department and shall be appointed by the Governor and shall serve for a term concurrent with that of the Governor by whom the commissioner was appointed or for the unexpired portion thereof. Alabama Code 1975, § 36-13-7, provides:
“The Governor is authorized and empowered to remove from office and discharge from employment, with or without cause, any person who holds office or employment in any of the state executive departments and agencies by virtue of appointment by the incumbent governor or any preceding governor, except those employees subject to the merit system provisions.”
Under this constitutional and statutory structure, the Governor, as the supreme executive responsible under the Constitution for the execution of the tews of this State, acts by and through agency and departmental heads, who serve as vehicles by which the Governor carries out his constitutional mandate. By executing his power to appoint and to remove, the Governor ensures that the executive departments and agencies implement his decisions and adhere to his policies and his interpretations of the laws so that his decisions may be faithfully executed. The act of any of these subordinate executives is the act of the Governor himself.
The tews pertaining to insurance that the Governor must execute through the commissioner of insurance, whom he shall select “with special reference to his training, experience, and capacity” (Ala.Code 1975, § 27-2-2(b)), are found primarily in Tit. 27, Ala.Code 1975, which consists of 46 chapters, hundreds of sections, and over 600 pages. In addition, and as it pertains to the underlying case, the Legislature, pursuant to Ala.Code 1975, §§ 10-4-100, -115, has given to the commissioner of insurance certain duties and certain powers to regulate health care service plans. Blue Cross and Blue Shield is a special purpose corporation organized under this section for the specific and limited purpose of maintaining a health care service plan for subscribers. Blue Cross & Blue Shield v. Protective Life Ins. Co., 527 So.2d 125 (Ala.Civ.App. 1987). Every corporation that provides a health care Service plan (“health care service corporation”) must procure from the commissioner of insurance a certificate of authority to do business (§ 10-4-106); no health care service corporation can issue or sell any contract until the form of the contract has been filed with the commissioner of insurance (§ 10-4-106); and a health care service corporation must file with the commissioner of insurance any change in rates, charges, fees, and dues. It is the duty of the commissioner of insurance to approve or disapprove in writing the rates, charges, fees, and dues, after making certain that they are not unreasonably high or excessive, that they are adequate to meet the liability assumed under the contracts and all expenses in connection therewith, and that they are adequate for the safety and soundness of the health care service corporation. In making this determination, the commissioner shall take into account past and prospective loss experience (§ 10-4-109). In § 10-4-110, the commissioner is given the following powers:
“The commissioner of insurance or any of his designated deputies or examiners shall have the power of visitation and examination into the affairs of such corporation, shall have free access to all books, papers, and documents that relate to the business of said corporation and may summon and qualify witnesses under oath and examine them in relation to the affairs, transactions and conditions of the corporation, and make public disclosure of his findings. Such examina *687 tion shall be made at the expense of the corporation.”
Health care service corporations must obtain from the commissioner of insurance a certificate of authority for every individual agent writing or soliciting health care certificates for the health care service corporation (§ 10-4-111). Health care service corporations must deposit certain securities with the state treasurer, and these securities may be replaced from time to time by other authorized securities of equal value, with the approval of the commissioner of insurance (§ 10-4-112). Each health care service corporation must annually file in the office of the commissioner of insurance a statement verified by at least two of the principal officers of the health care service corporation, showing its condition on December 31 next preceding, in the form, and containing such matters, as the commissioner of insurance shall prescribe (§• 10-4-113). Section 10-4-113 also provides:
“Every such corporation shall set up as the liability for unperformed contracts or unearned dues on all outstanding certificates 95 percent of the unearned net dues or charges collected on such contracts computed on a monthly basis (by net dues is meant the amount received by the corporation less acquisition costs). Every such corporation shall at all times hold assets equal to such aggregate amount so computed over and above all other liabilities, but the commissioner of insurance shall allow to the credit of every such company in the account of its financial condition all such assets as are, or can be made, available for the payment of claims or losses in Alabama.”
Likewise, § 10-4-114 provides:
“All decisions, findings, and orders of the commissioner of insurance made under the provisions of this article shall be subject to review, revision, and reversal by proper proceedings brought in any court of competent jurisdiction within 30 days from the date of the decision, finding, or order; and the decision of such court may be reviewed by appeal.”
THEREIN LIES THE POWER.
The majority opinion begins with the attorney general, whose duties and powers I now examine. The Alabama Constitution of 1901, Art. V, § 112, as amended by Amendment No. 284, provides: “The executive department shall consist of [an] ... attorney-general_” The Alabama Constitution of 1901, Art. V, § 137, as amended by Amendment No. Ill, provides, in pertinent part: “The attorney general ... shall perform such duties as may be required by law.” There is nothing in the Constitution that gives the attorney general any specific power.
Those duties of the attorney general relevant to the case at issue are as follows:
“He must attend, on the part of the state, ... to all civil actions in which the state is a party in the supreme court or court of civil appeals. He shall also attend to all cases other than criminal that may be pending in the courts of Montgomery county, in which the state may be in any manner concerned.... ”
Alabama Code 1975, § 36-15-1(3).
“All litigation concerning the interest of the state, or any department thereof, shall be under the direction and control of the attorney general, and the employment of any attorneys for the purpose of representing the state or any department thereof shall be by the attorney general with the approval of the governor, but nothing in this section shall prevent the governor from employing personal counsel, whose compensation shall be payable out of the governor’s contingent fund.”
Alabama Code 1975, § 36-15-21.
“The attorney general shall assign to the department [of insurance] an assistant attorney general who shall render to the commissioner such legal services as may be required.”
Alabama Code 1975, § 27-2-11.
The attorney general is a constitutional officer elected independently from the Governor. Like the Governor and his department heads,'the attorney general is responsible for protecting the State’s interest. The potential for conflict has been recognized by the courts in other states:
*688 “The constitutional independence of these offices (Governor and Attorney General) and their differing functions and duties, create clear potential for conflict between their respective holders. In the event of such conflict, power in the attorney general to resolve, without their consent, controversies involving agencies or departments under the supervision of the Governor, could be abused by exercise in a manner derogative of the Governor’s constitutional duties to exercise executive power and to supervise the official conduct of all executive officers.”
Tice v. Department of Transportation, 67 N.C.App. 48, 312 S.E.2d 241, 245 (1984).
In Arizona, as in Alabama, both the Governor and the attorney general are independent constitutional officers. The Arizona constitution provides that the governor “shall take care that the laws are faithfully executed” and provides that “the powers and duties of the Attorney General, shall be as prescribed by law.” In Arizona State Land Department v. McFate, 87 Ariz. 139, 348 P.2d 912, 918 (1960), the Supreme Court of Arizona, in denying the attorney general’s standing to initiate certain proceedings without the governor’s approval, wrote:
“Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive departments and is obligated and empowered to protect the interest of the people and the State by taking care that the laws are faithfully executed.”
It is clear to me that under our constitutional and statutory scheme, the Governor alone, and not the attorney general, is responsible for supervising the state’s executive departments and agencies and is obligated and empowered to protect the interest of the people of the State by taking care that the laws are faithfully executed.
When considered in the light of the Governor’s constitutional mandate, the seemingly broad power granted to the attorney general by § 36-15-21 to direct and control litigation is clearly restricted. To give the section the broad construction that the majority gives it clearly puts § 36-15-21 at odds with §§ 113 and 120 of our Constitution, for it allows the attorney general’s statutory or even common law power (if such was not “altered or repealed” by § 36-15-21, see Ala.Code 1975, § 1-3-1) to detract or take away from the Governor’s “supreme executive power.” (Emphasis added.) When a statute is susceptible to two constructions, and one would render it unconstitutional while the other would not, we must give the statute the construction that would make it constitutional. Whitson v. Baker, 463 So.2d 146 (Ala.1985).
In my opinion, the phrase “[a]ll litigation concerning the interest of the State, or any department thereof, shall be under the direction and control of the attorney general” does not vest in the attorney general the authority to make substantive policy decisions concerning matters in litigation.
From time to time, Governors have intervened in cases in which they thought the public interest was involved and was not being adequately protected. See Continental Telephone Co. of the South v. Alabama Public Service Commission, 479 So.2d 1195 (Ala.1985); General Telephone Co. of the Southeast v. Alabama Public Service Commission, 356 So.2d 612 (Ala. 1978); Alabama Public Service Commission v. South Central Bell Telephone Co., 348 So.2d 443 (Ala.1977); Alabama Gas Corp. v. Wallace, 293 Ala. 594, 308 So.2d 674 (1975); State v. Alabama Public Service Commission, 293 Ala. 553, 307 So.2d 521 (1975). Under the majority opinion, does the attorney general, by his authority to direct and control litigation involving the State’s interest, have authority to dismiss the intervention of the Governor, the supreme executive?
Recently, this Court issued its writ of certiorari without being requested to do so by the attorney general or anyone else. White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989). White involved millions of dollars of State funds (franchise tax on corporations that were incorporated in states other than Alabama). Under the majority opinion, would the attorney general, by his authority to direct and control litigation involving the State’s interest, *689 have the right to prevent this Court from issuing its writ of certiorari in litigation involving the State’s interest?
The Legislature has designated that the substantive policy decisions in the underlying matters in litigation are the responsibility of another member of the executive department. The power to direct and control normally gives the attorney general the authority to decide what is and what is not worth taking to court or defending there and what is or what is not to be appealed, and the executive official involved should normally yield to the judgment of the attorney general so that the State may speak to the courts in a consistent and coherent manner. However, the attorney general’s right to manage litigation must end when it interferes with a State agency’s authority and duty to enforce substantive matters relating to its legislative purpose. When this happens, I would adopt the position of the Mississippi Supreme Court:
“The unique position of the Attorney Genera] requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or a specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General’s personal opinion. If the public interest is involved, [the Attorney General] may intervene to protect it.”
State v. Mississippi Public Service Commission, 418 So.2d 779, 784 (Miss.1982).
This case is distinguishable from State ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So.2d 280 (1949). This Court in Carmichael held that a statute that allowed the Department of Revenue to hire special outside counsel and provided that such counsel could not dismiss a case without the approval of the Department of Revenue, did not apply to the settlement of a case referred to and handled by the attorney general, where the record showed that “there was a bona fide dispute as to the law and to the facts governing a determination of the amount due.” 252 Ala. at 482, 41 So.2d at 282. The holding 'in Carmichael was that the State’s senior lawyer, rather than “another executive head, not necessarily learned in the law,” was the appropriate person to weigh the merits of the case with the law and facts in dispute, consider the risks of litigation, and assess whether the State’s interest would be better served by proceeding to trial for a claim of $2,591.50 or accepting a settlement of $1,587.50. In Carmichael, the revenue commissioner relied on § 100 of the Constitution, which provides, in pertinent part:
“No obligation or liability of any person, association, or corporation held or owned by the State ... shall ... be extinguished except by payment thereof;
The Court in Carmichael found that there had been no final assessment fixing an amount due, and, therefore, that § 100 of the Constitution did not apply to that particular case. The revenue commissioner also relied on the following provision of Tit. 51, § 139, Code of Ala.1940 (now Ala.Code 1975, § 40-2-66):
“No case pending before a court affecting the revenue laws of the State shall be dismissed by counsel representing the State, whether specifically employed counsel or otherwise, except by order of the Department of Revenue.”
The Court held that this provision applied to the dismissal of pending cases by specially employed counsel and did not and was not intended to apply to the attorney general.
The broader constitutional or policy issues that have been raised in the case at issue were not raised in Carmichael. Therefore, the broad language in Carmichael is dictum and is not binding on this Court. In Carmichael, this Court left the door open for future cases by “pretermit-ting any question of bad faith” on the part of the attorney general, because that issue was not raised. Likewise, in qualifying its rather broad recognition of the power in the attorney general to act on the State’s behalf, with the phrase “[unless] inhibited by organic law,” i.e., constitutional constraints which were obviously not urged on the Court in the Carmichael case, this Court acknowledged that there could be *690 constitutional restrictions on the attorney general’s power to “direct and control” litigation. 252 Ala. at 485, 41 So.2d at 285.
The attorney general’s action was “inhibited by organic law” in regard to the case at issue; therefore, on this ground I can also distinguish this case from Carmichael.
Carmichael should have no precedential effect on this Court’s decision in this case; therefore, I would adopt the position of the Supreme Court of Mississippi, which I find to be a fair rule, a reasonable rule, a practical rule, a rule grounded in the well-defined boundaries of the attorney/client relationship, and, most importantly, the rule that conforms to the Alabama Constitution. By adopting this rule, we would allow competing views held by independent constitutional officers concerning what is in the best interest of the State to get a full and fair hearing and would place the dispute in the hands of an independent judiciary for decision rather than having one independent officer of the executive branch impose his will on another. The right rule for this case, and the right rule for this State, is as follows:
“The unique position of the Attorney General requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General’s personal opinion. If the public’s interest is involved, he may intervene to protect it.”
State v. Mississippi Public Service Commission, supra, at 784.

. For example, the following officials are appointed by and serve at the pleasure of the Governor: the adjutant general of the Alabama National Guard, Ala.Code 1975, § 31-2-58; (he commissioner of corrections, Ala.Code 1975, § 14-1-1.3; the director of development, Ala. *686 Code 1975, § 41-9-201; the director of the Department of Economic and Community Affairs, Ala.Code 1975, § 41-23-4; the director of emergency management, Ala.Code 1975, § 31-9-4; the highway director, Ala.Code 1975, § 23-1-21; the director of industrial relations, Ala.Code 1975, § 25-2-6; the commissioner of mental health, Ala.Code 1975, § 22-50-16; and the director of public safety, Ala.Code 1975, § 32-2-1.